Jauncey v. Thorne.

---

### JAUNCEY and others vs. THORNE and others.

Where a will was made, and the testator died previous to the revised statutes, but the will was proved, before the surrogate, after the first of January, 1830, and before the passage of the act of May, 1837, concerning the proof of wills, &c. *Held* that the formalities requisite to the due execution of the will were those which were required by the second section of the act of March 5th, 1813, concerning wills; but that the mode of proof must be that which was prescribed by the provisions of the revised statutes, which were in force when the will was propounded for probate.

In a proceeding before the surrogate, to prove a will of real estate, under the provisions of the revised statutes, it is not necessary that each witness to such will

Jauncey *v.* Thorne.

should be able to swear that all the requisites of the statute, which was in force at the execution of the will, were complied with.

The statute only requires, in such cases, that it should appear from the proof taken before the surrogate, that the will was duly executed, by a testator who was competent to make a will, and who was free from restraint.

Even upon a bill filed to establish a will of real estate, and where the decree is to be conclusive upon the rights of the heirs at law, the court of chancery does not require that each subscribing witness shall be able to recollect, and prove, that all the formalities required by the statute were complied with.

The rule of the English court of chancery is, that upon such a bill, all the subscribing witnesses, if living and competent to testify, must be called by the party seeking to establish the will, and must be examined by him; so as to give the adverse party an opportunity to cross-examine them as to the sanity of the testator, and the circumstances attending the execution of the will. And the rule is the same upon the trial of an issue of *devisavit vel non*, awarded by the court of chancery.

But it is not necessary that all the witnesses should testify to the due execution of the will, and that the testator was of sound and disposing mind and memory at the time of the execution thereof.

Where there is an infirmity in the recollections of the attesting witnesses, as to what took place at the time of the execution of a will, the court will not require positive and affirmative evidence that all the formalities required by the statute were complied with; but will look to all the circumstances of the case, in forming its conclusions of fact upon that subject.

It is necessary that the attesting witnesses should see the testator, or some one for him, sign the instrument which they are called upon to witness; or that the testator should either say or do something, in their presence and hearing, indicating that he intends to recognize such instrument, or paper, as one which has been thus signed by him, and upon which his name appears, as a valid will; or as having been signed by his authority, for the purposes therein expressed.

But it is not necessary that the testator should, in express terms, declare that his name, signed to the will, was so signed by him, or that it was so signed by his authority and direction, and in his presence.

The production of the will, with his name subscribed to it, and in such a way that the signature can be seen by the testator and by the attesting witnesses, and the request of the testator that they should witness the execution of the instrument by him, or as his will, would of itself be a sufficient acknowledgment, of his signature, to render the will valid, under the provisions of the act of March 5, 1813, concerning wills.

The most liberal presumptions in favor of the due execution of wills, are sanctioned by courts of justice, where from lapse of time, or otherwise, it might be impossible to give any positive evidence on the subject.

Accordingly, a will may be sustained, even in opposition to the positive testimony of one or more of the subscribing witnesses, who, either mistakenly or corruptly, swear that the formalities required by the statute were not complied with, if, from other testimony in the case, the court or jury is satisfied that the contrary was the fact.

Jauncey *v.* Thorne.

And where any of the witnesses are dead, or in such a situation that their testimony cannot be obtained, proof of their signatures is received, as secondary evidence of the facts to which they have attested, by subscribing the will as witnesses to the execution thereof.

THIS was an appeal from a decision of the circuit judge of the first circuit, affirming the sentence and decree of the surrogate of the city and county of New-York, admitting the will of William Jauncey, deceased, to probate, as a valid will of real estate, and allowing it to be recorded. The will bore date in May, 1825, and was propounded for probate, as a will of real estate, under the provisions of the revised statutes, in 1835. The testator's name and seal were affixed to the same, at the end thereof, and the will was attested by three witnesses, whose names were written at the end of the following attestation clause: "Signed, sealed, published, and declared by the said William Jauncey, the testator, as and for his last will and testament, in the presence of us who were present at the signing, sealing and publishing thereof." There was no dispute as to the testator's capacity to make a will, and to understand the contents thereof. But it was insisted, on the part of the appellants, that the instrument propounded, was not proved to have been executed and attested in the manner required, by the law in force at the time of its date, to render it a valid will of real estate. Isaac Jones, one of the subscribing witnesses, was the testator's barber. James Apps, the second witness, was a servant in the family; and the third, Charles Robinson, was the testator's coachman. Jones testified, in substance, that he was in the habit of attending the testator daily at his house. As he was about leaving one day, the testator said to him, if he was not in a great hurry, he would get him to witness his signature to a paper. The testator thereupon produced the instrument propounded, and putting his finger on the signature and seal, declared that he acknowledged it as his hand and seal for the uses and purposes therein mentioned, and Jones then subscribed his name thereto as a witness, in the presence of the testator. He, Jones, was at first alone in the room with testator, while dressing his hair. The testator went to the door and called for

Jauncey v. Thorne.

the other two subscribing witnesses. They accordingly came, while Jones was present, and both signed their names to the instrument, as witnesses, in his presence. The name of William Jauncey, the testator was subscribed to it, when he acknowledged the instrument. This witness, upon his cross-examination, stated that he knew nothing of the contents of the paper, or what it was, until sometime afterwards, when the testator told the witness he wished to remind him that he was a witness to his will. Jones further testified, that he could not recollect that the testator made any observation, or said any thing to Apps or Robinson when they witnessed the instrument.

Apps, the second witness, testified that some one told him Mr. Jauncey wanted him in the parlor. He then went up and the testator enquired if he was James, and being answered in the affirmative, the testator pointed to a paper on the table, and told him to sign his name to it as a witness, under that of Jones, and he subscribed his name accordingly, in the presence of the testator, as a witness to the instrument propounded; and, as this witness believed, the testator said it was his will. He did not, however, recollect whether the testator's name was to it when he subscribed, it or not. But he recollected that the testator observed to him, while he was in the room, that he understood he was going to England, and if so, he would be handy to prove his signature to the paper, as he might probably be wanted for that business in England. Upon his cross-examination, this witness testified that he did not recollect whether Jones was present or not; that Jones' name was not written after he, Apps, got into the room, but it was there when he subscribed; that he was in the room about five minutes, but he did not remember any other person being in the room except the testator, who did not leave the room while he was there. He was resting or standing near the table.

Robinson, the last subscribing witness, testified that he was called on by the testator to witness the will; that the testator did not subscribe his name to it in his presence, but it had previously been written by him. The testator put a pen in deponent's hand,

and acknowleged and declared the instrument to be his will, and requested him to sign his name to it, as a subscribing witness, and he did so, in the presence of the testator; who remarked, that Apps was going to England, and would be handy to prove the will there, in case it should be necessary. Upon his cross-examination, this witness testified that Jones and Apps, the other two subscribing witnesses, were present when he attested the will, but he did not see them subscribe their names, as their names were subscribed before he entered the room; that the testator was standing up near the table when he attested the will.

The parties opposing the will, before the surrogate, objected, among other things, that the instrument propounded had not been duly proved, because it was not, at the time of its attestation, duly published and declared as the will of the testator; nor had it been signed by the testator in presence of all the subscribing witnesses; nor had his signature been acknowledged to all of them. But the surrogate decided that the will was duly proved, and he admitted it to be recorded as a valid will of real estate; it having, previous to the revised statutes, been admitted to probate as a will of personal property. His decision was affirmed, upon an appeal to the circuit judge. The parties contesting the will thereupon appealed to the chancellor. And the executor and trustee, who propounded the will for probate *before the surrogate, having died subsequent to the order of affirmance by the circuit judge, the proceedings were revived against the devisees, and other persons beneficially interested in the real estate under the alleged will. (*See Jauncey v. Rutherford,* 9 *Paige's Rep.* 273, *S. C.*) Upon the argument of the appeal before the chancellor, the counsel for the respondents agreed to waive all formal objections, if any such existed, as to the manner of reviving the proceedings upon the appeal; the respondents reserving the right to claim the benefit of the new facts stated in their answer to the petition of appeal, so far as they could legally avail themselves thereof. And it was further agreed, that if any of the parties, named in the petition of appeal, had died or married, since the commencement of the

Jauncey v. Thorne.

proceedings to revive, the decree upon the appeal should be entered *nunc pro tunc*, so as to precede such death or marriage.

*J. C. Spencer*, for appellants. The paper writing purporting to be the last will and testament of William Jauncey deceased, is not attested, and is not proved to have been executed, in the manner required by the then law, to entitle it to be recorded as a will of real estate. In this proceeding all the witnesses must be examined ; and they should corroborate each other as to the facts necessary to prove a valid execution of the will. At all events it must be proved, by some one or more of the witnesses, that all the facts necessary to a valid execution of the will, were known, at the time, to each and all of the witnesses ; and that each of them did what the law required of them, to complete the will. In this case the other witnesses do not prove a single requisite of the statute to have been complied with, to the knowledge of the witness James Apps.

It was necessary, under the act of 1813, concerning wills devising real estate, (1 *R. S.* 464,) 1. That the will should be signed by the testator by his own hand, or by the hand of another. 2. That each of the three witnesses should attest the execution of the will—that is, the signing by the testator—without which it could not be executed. 3. As nothing can be attested by a person which he does not himself know, or beli ve to be true, the statute, in requiring attestation, required also the previous knowledge by the witness of the factum that the will was signed—that there was a signature to it purporting to be that of the testator. 4. It also requires that the witness should know that such signing was by the testator, or by his direction ; or otherwise he would attest what, as to him, was a falsity—or at least, what he did not know to be true. The knowledge thus required by the statute may be derived from having seen the act performed, the actual signing, or from the acknowledgment of the fact by the testator. Such acknowledgment, being allowed by the court, as a substitute for actual seeing by the witness, should be as explicit, and have as direct reference to the fact, as the other species of evidence for

Jauncey *v.* Thorne.

which it is substituted, and should therefore point directly to the factum of signing.

The few cases in which loose declarations of the testator respecting the paper being his will, or of his requesting witnesses to sign it, without their knowing that the testator's signature was actually to the paper, and without direct reference by him to the signing, are contrary to the spirit and letter of the statute, are opposed to the earlier and sounder decisions, are not binding on this court, and have been in effect overruled by recent decisions, upon the new English statute, and upon our revised statutes, which in this respect do not differ from the old law.

The subscription of the witness required by the statute, is but evidence of attestation, in the absence, or during the incompetency of the witness; and when the witness is examined, and is competent, and recollects the facts and circumstances, the subscription itself is of no avail to prove attestation. It is not proved by any witness that the testator signed the will in the presence of Charles Robinson, or of James Apps, two of the subscribing witnesses. It is not proved that James Apps knew that the testator's name was subscribed to the will, at the time he subscribed it. Nor is it proved that James Apps knew that the testator's name was signed to the will by the testator or by his direction, at the time he witnessed it. The declarations of the testator, as proved, did not communicate any such knowledge to the witness Apps. Apps therefore could not attest the execution of the will, and his subscribing it is not evidence of attestation, when explained by his testimony. The will has not been attested by Apps, although subscribed by him. Apps' testimony does not establish the execution of the will, either by the actual signing of it by the testator, or by his acknowledgment of such signature. And the same point is applicable to the testimony of Charles Robinson.

*D. Lord,* for respondents. I. The validity of the execution of this will is to be determined according to the law in force at the time it was made.

Jauncey *v.* Thorne.

The will was actually signed by the testator. This is proved, 1. By the acknowledgment of his signature to Jones; 2. By telling Apps it was his will and that he could prove testator's signature; 3. By the acknowledgment before Robinson that it was his will. Acknowledgment of the signing, or that the paper is his will, is proof of signing. The three witnesses above named signed the attestation in the testator's presence.

If proof were necessary, that the testator, at the time of execution, knew that the paper was his will, such proof exists in the testimony of Apps and Robinson as to what took place at the time of attestation, and of Jones as to the subsequent recognition of that as an existing fact.

*Geo. Griffin,* for the same parties. The proceeding before the surrogate was not in the nature of a bill in chancery to establish a will; but was a proceeding under the statute—analogous to the old proceedings before courts of common law to admit wills to be recorded. The statute respecting wills is binding upon courts of law as well as of equity. Both courts are bound to hold as sacred, and to sustain, as far as possible, the most sacred of all human instruments—the will of a dying man. The statute is adopted from the English statute of Charles 2; which was passed here soon after the revolution, and has since been re-enacted several times. And when the legislature re-enacted it, they re-enacted it with all the adjudications which had been made under it.

Under the statute, there are three requisites essential to the validity of a will. 1. That the will should be in writing. The will, in this case, was in writing. It is not denied that it was in writing. 2. That it should be signed by the testator. We must therefore prove the signing. But it is not necessary it should be proved by three witnesses. Proof by one witness is enough. That is sufficient in all cases, unless a statute requires that proof should be made by three. A will has been proved and established by other persons, against the testimony of all the subscribing witnesses. (1 *Wm. Black. Rep.* 365.) That was a case of conspiracy, among the witnesses, to defeat the·

Jauncey *v.* Thorne.

will. While courts will take care that false wills are not established, they will take equal care that real wills are not defeated. The answer to the petition of appeal, in this case, states that the will was all written by the testator himself, in his own hand-writing. The new matter thus introduced was properly before the court. The proceeding before the surrogate is anal‑ ogous to proceedings in the prerogative court. And that court allows new matter to be produced, on appeal. The declaration of the testator, to the witness Jones, that the instrument was his hand and seal, was equivalent to an assertion that it was all in his hand-writing. That declaration did not relate merely to his signature, nor to the seal. 3. It is necessary, under the statute, that the will should be subscribed by three witnesses, in the presence of the testator. But the witnesses need not subscribe at the same time. Days, months, and years may intervene between their several signatures. And delay, instead of affecting injuriously the validity of the will, serves to give it a deliberative character, which perhaps carries a greater weight with it than a will possesses which is executed and witnessed by all the witnesses, at the same time. But in this case the witnesses did subscribe simultaneously. .

This will, then, has the requisites of having been in writing, of being signed by the testator, and subscribed by the witnesses in his presence—all the requisites pointed out in the statute.

The subscribing witness must be convinced of the signature of the testator. The *quo animo* he signed it, is all important also. It must have been done *animo testandi*. This is what gives vitality to the instrument, and breathes into it the breath of life. It is not necessary the subscribing witnesses should see the testator write his name. An acknowledgment by him, to them, that he has executed it, or that it is his act and deed, is sufficient. This principle has become established by the lapse of centuries. It has taken root firm as mother earth herself. This acknowledgment is a sufficient publication. It is not ne‑ cessary the testator should tell the witnesses it is his will. It is sufficient if he announces it to be his act and deed. This

Jauncey v. Thorne.

is the important thing to be done. The case does not hang on a name. Signature is but a part of the *res gestæ*. 'Tis but the vestibule of the great interior of the transaction. The attestation of a will is not dissimilar to the acknowledgment of a deed. The statute relative to deeds requires a deed to be acknowledged, to authorize it to be recorded. And the statute respecting wills requires that they should be attested, to become efficacious. So if the testator acknowledges that the will is his act and deed, it is sufficient. The acknowledgment of the testator to Jones, that he executed the will for the uses and purposes therein mentioned, was sufficiently full and explicit. And his saying to the same witness, some time after the execution of the will, "Recollect that you witnessed my will," was equivalent to a similar declaration made at the time it was executed. And his saying to Robinson, the last witness who signed, while the others were present, that the instrument was his will, was tantamount to a declaration made to all. Apps does not remember whether the testator's signature was there when he signed his name; but he swears that the testator announced the instrument to be his will. The presumption is that he said this before the witness had signed his name. His swearing merely upon belief is not confined to this part of his testimony. His belief is a kind of moral stuttering; and whatever he swears to he qualifies, by expressing his belief. Three persons, after a lapse of ten years, cannot be expected to have an identity of recollection respecting a particular transaction. Difference of recollection, as to details, is an evidence of honesty. If, after a great lapse of time, several witnesses concur in every minute particular, it affords just ground for suspecting collusion.

It is not denied by the counsel for the appellants, that an acknowledgment is sufficient. But they insist that the testator must, in terms, acknowledge his signature. We insist it is sufficient if he acknowledges the instrument to be his will. The statute requires that the *will* shall be attested, not the *signature*. If the will was the testator's, then the signature was his; and if he acknowledged the will to be his, he acknowledged the signature to be his, for that is an essential part of the instrument.

Jauncey v. Thorne.

*Geo. Wood*, in reply. Even if this were a purely ecclesiastical case, the parties would be confined to the evidence introduced in the court below. The allegations in the answer to the petition of appeal, therefore, are not admissible as evidence here. This is a question concerning real estate ; a subject over which ecclesiastical courts have no jurisdiction. Consequently no analogy exists which renders the practice of those courts applicable.

Admitting that all the witnesses heard, and heard in due season, the acknowledgment of the testator that it was his will, that was not sufficient. The acknowledgment must be of the act of signing ; and there must be a special, direct reference to the signature. One witness is not sufficient to make out all the facts essential to the validity of a will. It is requisite that all the subscribing witnesses should be able to testify to the existence of those facts. It will not be inferred that all the witnesses knew the will to be in the testator's hand-writing.

The statute respecting wills is a remedial statute, and it should be so construed as to correct the mischief it was intended to prevent. The object of the statute was to guard against fraud, the importunities of relatives, and undue influence on the part of proteges, &c. This species of undue influence is like the pestilence which walks at noonday, but walks unseen. Its presence is only felt by experiencing its deleterious influence. It can only be counteracted by a rigid enforcement, by the courts, of the requirements of the statute.

THE CHANCELLOR. The will in this case was made, and the testator died, previous to the revised statutes; but the will was proved before the surrogate, after the first of January, 1830, and before the passage of the act of May, 1837, concerning the proof of wills, &c. (*Laws of* 1837, *p.* 524.) The formalities requisite to the due execution of the will, therefore, were those which were required by the second section of the act of March 5th, 1813, concerning wills. (1 *R. L. of* 1813, *p.* 364.) But the mode of proof must be that which was prescribed by the provisions of the revised statutes which were in force when

Jauncey *v.* Thorne.

the will was propounded for probate, before the surrogate, in 1835. The appellants' counsel, in their first point, insist that in a proceeding before the surrogate to prove a will of real estate, under the provisions of the revised statutes, all the witnesses to such will, who are living in the state and of sound minds, must not only be produced and examined, but that they must also corroborate each other as to the facts necessary to the valid execution of the will. In other words, that each witness must be able to show that all the requisites of the statute which was in force, at the execution of the will, were complied with. This question I will first proceed to consider.

The article of the revised statutes relative to wills of real property and the proof of them, as it existed in 1835, provided that upon proof being made of the due service of the notice of the application to prove a will of real estate, the surrogate should cause the witnesses to be examined before him, and should reduce the proofs and examinations to writing. And that all the witnesses to such will, who were living in the state, and of sound mind, should be produced and examined ; and that the death, absence, or insanity of any of them, should be satisfactorily shown to such surrogate. (2 *R. S.* 58, § 12.) The thirteenth section directed that, when any one or more of the subscribing witnesses to the will should be examined, and the other witnesses were dead, or resided out of the state, or were insane, then such proof should be taken of the hand-writing of the testator, and of the witness or witnesses so dead, absent, or insane, and of such other circumstances as would be sufficient to prove such will on a trial at law. The next section provided that *if it should appear, upon the proof taken, that such will was duly executed,* that the testator, at the time of executing the same, was in all respects competent to devise real estate, and was not under restraint, the will and the proofs and examinations so taken should be recorded, and the record thereof signed and certified by the surrogate. These were all the provisions of the revised statutes relative to the probate of a will of real property, where all or any of the subscribing witnesses were alive and could be examined. And in all such cases the al-

---

---

lowing of probate, by the surrogate, and admitting the will to be recorded, rendered the original will, or the record of the proof thereof, prima facie evidence of the due execution of such will; but subject to be rebutted by contrary proof. (2 R. S. 58, § 15.)

It will be seen by reference to these several provisions of the revised statutes, which are substantially the same with those which were previously in existence, except as to the tribunal in which the proof was to be taken, that nothing is said as to the necessity of each witness being able to prove that all the formalities required by law were complied with, where all the subscribing witnesses are alive and in a situation to be examined. The statute only requires, in such cases, that it should appear from the proof thus taken, that the will was duly executed, by a testator who was competent to make a will, and who was free from restraint. Even upon a bill filed to establish a will of real estate, and where the decree is to be conclusive upon the rights of the heirs at law, the court of chancery does not require that each subscribing witness should be able to recollect, and prove, that all the formalities of the statute were complied with. The rule of the English court of chancery is, that upon such a bill, all the subscribing witnesses, if living and competent to testify, must be called by the party seeking to establish the will, and must be examined by him; so as to give the adverse party an opportunity to cross-examine them as to the sanity of the testator, and the circumstances attending the execution of the will. (*Townsend* v. *Ives*, 1 *Wils. Rep.* 216; *Ogle* v. *Cook*, 1 *Ves. sen.* 177; *Hudson* v. *Kersey*, 4 *Burn. Eccl. Law*, 102.) And the rule is the same upon the trial of an issue of *devisavit vel non*, awarded by the court of chancery. (*Booth* v. *Blundell*, *Coop. Chan. Ca.* 136.) But I have not been able to find any case in which it has been held to be necessary that all the witnesses should testify to the due execution of the will; and that the testator was of sound and disposing mind and memory, at the time of the execution thereof. On the contrary, in the case of *Lowe* v. *Jolliffe*, (1 *W. Black. Rep.* 365,) upon a trial at bar in the court of king's

Jauncey v. Thorne.

bench, on an issue of *devisavit vel non* out of chancery, the will was established, although all the subscribing witnesses swore that the testator was utterly incapable of making a will, or of transacting any other business whatever, at the time the will in controversy was supposed to have been executed. And all the subscribing witnesses in that case were subsequently convicted of perjury. (*See King* v. *The Nueys & Galey, Idem,* 416.) Our statute provides, in express terms, that if any one of the subscribing witnesses is examined, and the others are dead or incompetent, or out of the jurisdiction of the state, the will may be admitted to probate, upon proof of the hand-writing of the testator and of the witnesses who cannot be examined, and of such other circumstances as would be sufficient to prove such will on a trial at law. I cannot believe, therefore, it would be a proper construction of this statute to reject the probate of a will, where all the subscribing witnesses are competent and are actually examined, upon the very narrow ground that some of them cannot, after ten years, recollect that all the requisites of the statute of wills were complied with. The next question for consideration, therefore, is, whether it appears, upon the proofs taken before the surrogate in this case, that the instrument propounded for probate as the will of William Jauncey, was duly executed as a will of real estate.

The second section of the act of March 5th, 1813, in reference to the execution of wills of real estate, is the same in substance as the provision of the statute, 29th Charles 2d, c. 3, on that subject. And the decisions in the English courts, under the last mentioned statute, especially such as were made previous to our separation from the mother country, are proper to be taken into consideration, in determining the question whether the instrument propounded is proved to have been duly executed, according to the requirements of the act of 1813. The language of the last mentioned act is, that " every such last will and testament shall be in writing, and signed by the party making the same, or by some other person, in his presence, and by his express direction ; and shall be attested, and subscribed in the presence of such party, by three or more credible witnesses, or such last

Jauncey *v.* Thorne.

will and testament shall be utterly void." (1 *R. L.* 1813, *p.* 364, § 2.) Two questions arose under the English statute, soon after its passage, which are to some extent involved in the decision of this case. The first was, whether it was necessary that the testator should actually sign the will in the presence of the attesting witnesses; and the second, whether it was necessary that he should publish it, as a will, in the presence of such witnesses. Both of these questions arose in the case of *Peate* v. *Ougley,* (*Com. Rep.* 197,) on the trial of an ejectment suit, before Chief Justice Trevor, some thirty years after the passage of the statute. And if the recollection of the witness was to be relied on, as to what actually occurred at the execution of the will, his lordship decided both those questions in the negative. Very little reliance, however, is to be placed upon that case, as a judicial decision, upon either of the questions referred to. For it was, at the best, a mere *nisi prius* decision; and it appears to have been submitted to the jury, as a question of fact, whether the provisions of the statute had been complied with. And, under the circumstances of that case, I think the jury were authorized to presume that the will was not only signed in the presence of all the subscribing witnesses, but that it was also published by the testator as his will, in their presence. Two of the witnesses were dead, and the survivor was examined twenty-seven years after the will was executed. It is hardly probable, therefore, after such a lapse of time, that he would recollect what occurred at the execution of the will. And the circumstances having passed from his mind, he might very naturally suppose he did not see the testator write his name to the will, or hear him tell the witnesses what the instrument was which they were called upon to attest the execution of. But the attestation clause, which was in the hand-writing of the testator, in that case, stated that the instrument which the witnesses were called on to attest, was signed, sealed, and published as his will, in their presence.

In reference to the first question, however, the case of *Lemaine* v. *Stanley,* (3 *Lev. Rep.* 1,) and the case in Skinner, (*Anon Skin. Rep.* 227,) must have assumed the ground that

an actual signing of the will, by the testator, in the presence of all the subscribing witnesses, was unnecessary; though I think the first case was an erroneous construction of the statute, as to what a signing of the will by the testator really was. Independent of those cases, it has been deliberately settled, in England, for nearly a century, that the statute of 29th Charles 2d, chapter 3, did not require the testator to sign his will in the presence of the attesting witnesses, provided it was actually signed by him, previous to his acknowledgment and publication of the will in the presence of all or each of those witnesses.

In *Stonehouse* v. *Evelyn*, which came before Sir Joseph Jekyl, the master of the rolls, in 1734, (3 *Peere Wms. Rep.* 253,) the proof was full that all of the attesting witnesses subscribed their names to the will in the presence of the testatrix. But one of them said he did not see her sign the will; but she owned, at the time the witnesses attested it, that her name, signed thereto, was her own hand-writing. His honor held that, without doubt, that was sufficient. And the reporter adds, that on the same day, he mentioned that decision to Justice Fortescue Aland, formerly a judge of the king's bench, and then one of the justices of the court of common pleas, who said it was the common practice, and that he had so ruled two or three times, upon evidence, at the circuit; and that it was sufficient if one of the subscribing witnesses swore that the testator acknowledged the signature to be his own hand-writing. The question came before Lord Hardwicke, eighteen years afterwards, in the case of *Grayson* v. *Atkinson*, (2 *Ves. sen.* 454,) and he decided that it was not necessary that the testator should sign the will in the presence of the witnesses; but that an acknowledgment by him to the attesting witnesses that it was his hand, was sufficient. Two years afterwards, the case of *Ellis* v. *Smith*, (1 *Ves. jun.* 12,) came before his lordship, assisted by the master of the rolls, the chief justice of the common pleas, and the chief baron of the exchequer. And the question was there deliberately decided, that the acknowledgment of the testator, before the attesting witnesses to a will

previously signed by him, was equivalent to signing it before them, and was a good execution of the will. Since this last decision, in 1754, the law appears to have been unquestioned in England, that under the statute of Charles 2d, it is not necessary to the validity of a will of real estate that the testator should have signed it in the presence of the subscribing witnesses. And this construction of the statute appears to have been followed in this state, and in most of the states of the union which have adopted the language of that statute, in prescribing the formalities to be observed in the execution of wills.

It was also settled in England, at a very early day, that a will of real estate, attested by three witnesses, who at several times subscribed their names, in the presence of the testator and at his request, was valid, although all the witnesses were never present at the same time. (*Anon.* 2 *Chan. Ca.* 109. *Cook* v. *Parsons, Prec. in Chan.* 184. *Jones* v. *Lake,* 2 *Atk.* 176, *n.*) It is at least doubtful whether the decisions upon either of these questions were in conformity with the intention of the framers of the provisions, in the statute of Charles, relative to the execution of wills of real estate. But they are in conformity with the letter of the statute, which only required that the will should be signed by the testator, but not that such signing should take place in the presence of the attesting witnesses. Nor did the statute, in terms, require the witnesses to attest the will at the same time, and in the presence of each other, but only that the will should be attested by three witnesses who should subscribe the same in the presence of the testator. These decisions had been so long acquiesced in as to have become a rule of property previous to the revolution. It is therefore too late to disturb them, in reference to any rights which had accrued under wills previous to the revised statutes; or even since, so far as the language of the statute has not been changed.

This construction of the statute having been established, the question naturally arose what it was that the subscribing witnesses to the will were to attest? the fact that the testator had actually signed the instrument, and that he recognized or publish-

Jauncey *v.* Thorne.

ed it as his will, or only the fact that he acknowledged the execution of the instrument to which he requested them to subscribe their names as witnesses; leaving the facts that it had been actually signed by him, or by his direction and in his presence, and that he intended it as a testamentary disposition of his property, to be supplied by other proofs, if necessary? Upon a careful examination of the cases on this subject, in England, I am not prepared to say that the question as to the necessity of an admission of his signature, or of a recognition of the instrument by the testator as a will, to and in the presence of the attesting witnesses, at the time they signed their names to such instrument as witnesses, was definitively settled there previous to our declaration of independence. But in a comparatively recent case, (*The Trustees of the British Museum* v. *White,* 3 *Moore & Payne's Rep.* 689; 6 *Bing. Rep.* 310, *S. C.*) both branches of this question came before the late Chief Justice Tindal, and his associates, and were deliberately decided by them. The case came up in the form of a special verdict found upon the trial of a feigned issue, of *devisavit vel non,* out of the court of chancery. Of course there was no room for presumption that the witnesses, or any of them, had forgotten the circumstances attending the execution of the supposed will. By the special verdict, it appeared that the instrument, which upon its face purported to be the testator's will, was all in his hand-writing, except the signatures of the subscribing witnesses; that immediately above their names there were written these words, in his hand-writing, "In the presence of us as witnesses thereto;" that the testator had signed it before it was signed by the witnesses, or either of them; that about five months before his death he requested two of the attesting witnesses to sign their names to the instrument, and they did so in his presence, but they did not see his signature, nor were they informed by him then, or at any other time, what was the nature of the instrument, or why they were requested to sign the same; that about two months afterwards the testator requested the other subscribing witness to sign his name to the instrument, which he immediately did in the testator's presence, who then inform-

ed him that it was his will; and that the testator was of sound and disposing mind and memory, at the time he signed the paper himself, and also at the times when the witnesses signed their names to the same. The court, upon a full argument, and after taking time to examine the questions raised, decided in favor of the validity of the will. The question again came before that court, about two years afterwards, and in substantially the same form, in the case of *Wright* v. *Wright*, (5 *Moore & Pay. Rep.* 316,) upon an issue ordered by the vice chancellor. But the court informed the counsel for the defendant that they intended to adhere to the decision in the case of *White* v. *The Trustees of the British Museum;* and that if the defendant was not satisfied with it, he could appeal to a higher tribunal, as the question was open to him upon the record.

I am not prepared to go the whole length of these last two decisions. For they establish the principle that, under the statute of Charles, an instrument may be a valid will of real estate, although neither of the subscribing witnesses, at the time they attested its execution, knew or were informed that it was a will, or that it had been signed by the alleged testator, or by any one for him, so as to make it a valid will upon its being duly attested or signed by the necessary number of witnesses. What do the witnesses attest in such a case, where they are entirely ignorant of what the testator is intending to do, or what he has done, or what is the object of obtaining their signatures to the paper which is presented to them for that purpose? Certainly nothing. For they neither attest the instrument as a will, which the testator has in fact, though without their knowledge, already signed, nor the fact that he has signed the instrument in their presence, nor that he has admitted to them that it had been signed by him before that time. Surely the attesting witnesses should see the testator, or some one for him, sign the instrument which they are called upon witness; or the testator should either say or do something, in their presence or hearing, indicating that he intends to recognize such instrument or paper as one which has been signed by him, as a valid will, or as having been signed

Jauncey *v.* Thorne.

by his authority for the purposes therein expressed. At the same time, I do not deem it necessary that the testator should in terms declare that his name, signed to the will, was so signed by him, or that it was so signed by his authority and direction, and in his presence. But the production of the will with his name subscribed to it, and in such a way that the signature could be seen by the attesting witnesses, and the request of the testator that they should witness the execution of the instrument by him, or as his will, would of itself be a sufficient acknowledgment of his signature to render the will valid, under the provisions of the act which was in force when this will was made. (*See Devisees of Eelbeck* v. *Granberry*, 2 *Hayw. Rep.* 232; *Hall* v. *Hall*, 17 *Pick. Rep.* 373; *Cochran's will*, 3 *Bibb's Rep.* 494; *Ilott* v. *Genge*, 3 *Curt. Eccl. Rep.* 172.)

It is a very different question, however, whether, to sustain and establish the validity of a will, the courts should hold it to be necessary for the subscribing witnesses to recollect and testify to the fact that all the formalities prescribed in the statute were actually complied with. For if this were required, very few devises of property would be supported unless the testimony of the witnesses was taken and perpetuated very soon after the wills attested by them were made. This, in many cases, would be wholly impracticable; as the testator frequently lives many years after he has executed his will. And where there is good reason to suppose the will has been duly executed, and that no fraud or want of testamentary capacity existed at the time it was made, justice to the dead as well as to the living, requires that the declared wishes of the testator should not be defeated by the imperfect recollections of the attesting witnesses; or by reason of their deaths or removal beyond the jurisdiction of the state. It is for this reason that the most liberal presumptions, in favor of the due execution of wills, are sanctioned by courts of justice, where from lapse of time, or otherwise, it may be impossible to give positive evidence on the subject. A will may, therefore, be sustained even in opposition to the positive testimony of one or more of the subscribing witnesses, who, either mistakenly or corruptly, swear that the formalities re-

quired by the statute were not complied with, if from other testi-
mony in the case the court or jury is satisfied that the contrary
was the fact.   And where any of the witnesses are dead, or in
such a situation that their testimony cannot be obtained,
proof of their signatures is received, as secondary evidence of
the facts to which they have attested by subscribing the will as
witnesses to the execution thereof.   The same rule is frequent-
ly applied to the case of a subscribing witness who is called
and sworn, but who, from defect of memory, has no recollection
of the transaction except that his signature to the will is genuine.
The decisions which have a bearing upon the question, whether
the evidence, in this case, was sufficient to establish the fact that
the testator subscribed and published the instrument propounded
as his will, or recognized the same as having been signed by
him, in the presence of the three subscribing witnesses who sign-
ed their names in his presence, are very numerous; and it may
be useful, in considering that question, to refer to some of them.

   In the case of *Hudson's will*, (*Skin. Rep.* 79,) which came
before the court of king's bench, on a trial at bar, only five
years after the statute of Charles, the will was established
against the testimony of two of the subscribing witnesses, who
swore the testator did not execute the will, he being incapable
of doing so, and that his mark was affixed by another guiding
his hand, and that he said nothing; the court and jury being
satisfied from other evidence, that the will was duly exe-
cuted.   In the case of *Hands* v. *James*, (*Comyn's Rep.* 531,)
where the witnesses to the will were all dead, it was left to the
jury to presume that they subscribed as witnesses in the testa-
tor's presence; although that fact was not stated in the attesta-
tion clause.   And that decision was followed in the subsequent
cases of *Croft* v. *Pawlet*, (2 *Stra. Rep.* 1109,) and of *Brice* v.
*Smith*, (*Willes' Rep.* 1.)

   Previous to the English statute of July, 1837, (1 *Vict. ch.* 26,) for
the amendment of the law with respect to wills, very few cases
arose before the ecclesiastical courts, in England, calling for a
construction of the laws relative to the execution of wills of real
estate.   But that statute requires the same formalities to be ob

served in the making of wills of personal property as of real estate. The ninth section of the act requires that the will shall be signed at the foot or end thereof, by the testator, or by some other person in his presence and by his direction, and that such signature shall be made, or acknowledged, by the testator, in the presence of two or more witnesses present at the same time, and that such witnesses shall attest and subscribe the will in the presence of the testator. And since the passage of that statute, several cases, involving the question as to what evidence is requisite to establish a will under its provisions, have come before Sir Herbert Jenner Fust, the official principal of the arches court and judge of the prerogative court of Canterbury. Although the decisions of that very able and distinguished judge and civilian, are of no higher authority here than those of judges of other courts in England, and in our sister states, having the same experience and knowledge in testamentary cases, they are entitled to great consideration, as judicial opinions upon the examination and decision of the question now under consideration. It will be recollected that the statute, 1 Vict. ch. 26, requires that the signature of the testator shall be made or acknowledged by him in the presence of two or more attesting witnesses, present at the same time. And the decisions of Sir Herbert Jenner Fust to which I shall refer, are mostly upon the question whether these requirements of the statute had been complied with, in making the wills propounded for probate.

In *Chambers & Yatman* v. *The Queen's Proctor,* (2 *Curt. Eccl. Rep.* 415,) which came before the prerogative court, in May, 1840, there were three witnesses to the will. One of them swore that it was signed by the testator in the presence of all of them, and that he then put his finger upon the seal, and said, " this is my act and deed," and then they witnessed it as a will, in his presence. Another testified to the acknowledgment of it as a will, but could not recollect that the testator signed it in her presence, or that he said any thing about his signature to it. And the third swore that he did not see the testator sign the will, but that there were a signature and a seal affixed to it; and that when they were requested to wit-

ness the will, the testator pointed to the seal where his name was already written. The counsel for the crown contended that the will was not executed in conformity to the statute; as two of the witnesses swore that the will was not signed in thei. presence, and there was no direct acknowledgment of his signature, as such, by the testator. But the learned judge declared he was satisfied, from the evidence, that the will .was signed by the testator in the presence of all the witnesses, and that two of them had forgotten the fact. And in the case of *Gove* v. *Garvin*, (3 *Curt*. 157,) which came before the same court, two years afterwards, the same learned judge pronounced in favor of the due execution of a will, upon proof by the scrivener, who drew and witnessed the will, that it was signed by the testator, in the presence of him and of the other witness; although the latter, who was not examined until two years after the will was made, was confident that the will was not signed by the testator in his presence, and that nothing was said about his signature.

In the case of *Ilott* v. *Genge*, (*Idem*, 160,) decided in the same year, the probate of the will was rejected; the testator, at the time he requested the witnesses to put their names to it, having carefully concealed the writing, so that they did not see his name; and having neither signed it in their presence, nor told them it was signed by him. In that case, however, Sir H. J. Fust admits there may be a virtual acknowledgment of his signature by the testator. He says, " it is not necessary that the testator should state to the witnesses that it is his signature; the production of a will by the testator, it having his name upon it, and a request to the witnesses to attest it, would be a sufficient acknowledgment of the signature, under the present statute."

In the case of *Gaze* v. *Gaze*, (*Idem*, 451,) before the same court, in March, 1843, the testator produced to the attesting witnesses a will, all in his own hand-writing, having his name and seal affixed, and requested them to sign their names under his, or "down here," pointing to a place just below his own name and seal. And the court held that this was a sufficient acknowledgment of his signature, by the testator; although

there was no certain evidence that the signature was in the testator's hand-writing, and only one of the witnesses knew that it was a will when they were called on to attest it.   The case of *Blake* v. *Knight,* (*Idem,* 547,) came before the same court about two months afterwards, and a similar decision was made. In that case the three attesting witnesses were examined ; and the substance of their testimony was, that the decedent did not sign the will in their presence, nor formally acknowledge his signature to them, nor did they recollect to have seen his signature ; that the first witness received notice that he, and his son and his apprentice, the three attesting witnesses, were wanted by the decedent to witness his will, and they went to his room accordingly ; that he there produced the will, which was written on one side of a sheet of paper, and spread it out upon the table, before them, and said : "This is my will ; it is a small will, written on one sheet of paper and all on one side ; will you witness it ?" and that they then subscribed their names to it as witnesses, in his presence, no other person being in the room. It further appeared, that the testator had formerly been a writer in an attorney's office, and that the will was in his own handwriting ; the attestation clause, upon its face, being in such a form as to show that all the provisions of the recent statute had been complied with, in executing the will.   His honor said he had not a doubt that the name of the testator was signed to the will before the witnesses attested it, any more than if they had positively sworn to the fact, and that the memory of the witnesses had failed them, the transaction having taken place more than four years previous to their examination ; that the court could not safely trust to the memory of witnesses under such circumstances, but must attend to the facts of the case, and say whether it was satisfied that the name of the deceased was to the will when the witnesses signed, whether signed in their presence, or signed beforehand and acknowledged in their presence.   He therefore pronounced for the validity of the will. The like decision was made by him in July, 1843, in the case of *Keigwin* v. *Keigwin,* (3 *Curt.* 607.)   There the two subscribing witnesses testified that they were at work in the house

of the testatrix; that on the day of the date of the will, she brought a paper into the room where they both were, which they identified as the instrument propounded for probate; that she brought a pen and inkstand with her, and said to them, "I want you to sign this paper," and pointed to the place where they were to sign; that the paper was folded so that they only saw her signature, which was then affixed to it; that they both subscribed it accordingly in her presence; that they had no recollection of her having pointed out her signature to them as being her name, but they were certain she did not say any thing in particular about her hand-writing. The will had been prepared at the request of the testatrix by a friend, and left with her; and he dated it on that day because she told him she should have some men to work for her at that time who could attest its execution. His honor said the will was executed according to the requirements of the statute, and that there was a sufficient acknowledgment of her signature; that it was not necessary for her to say, in express terms, "that is my signature;" but it was sufficient if it clearly appeared that the signature was existent on the will when she produced it to the witnesses, and was seen by them when they did, at her request, subscribe their names as attesting witnesses. In the case of *Cooper* v. *Bockett,* (*Idem*, 648,) which came before the same judge a few days afterwards, he decided in favor of the will, upon the facts testified to by the attesting witnesses, and the appearance of the will itself, which was all in the hand-writing of the testator, although both subscribing witnesses, two ignorant servants in the house, thought the testator's name had not been subscribed to the will when their subscriptions were made. I have doubts as to the correctness of this last decision, however, if the learned judge was right in supposing that, under the recent English statute, the signing of the testator must actually precede the subscriptions of the witnesses, and that it is not sufficient for him to sign the will the moment after, in their presence and under their cognizance. For the impression which the testimony in that case makes upon my mind, as to the matter of fact, is that immediately *after* the witnesses had

Jauncey v. Thorne.

subscribed their names, the testator took the pen and wrote his own name, saying to them at the same time, "this is my name in your presence;" which any testator, who was ignorant of the previous decisions of the court upon the question, might have supposed was the same thing as if he had signed his name the instant before the witnesses subscribed theirs.   It may also be remarked, in relation to the last case, that the witnesses must have been examined within four or five months after they attested the execution of the will, which is also a circumstance in favor of the probable accuracy of their recollections as to what actually took place.   But a wrong conclusion, by a judge, upon a matter of fact, does not detract from the value of his opinion upon a question of law which is involved in his decision ; unless the legal principle decided by him would, if established, have a tendency to lead the mind to wrong conclusions as to matters of fact.

I have intentionally omitted to refer to several other cases in the prerogative court, which are to be found in Curteis' Reports, having a bearing upon the question now under consideration, because they arose upon summary applications, and were decided ex parte.   The only other case, in that court, to which I shall refer, was decided upon contestation, in June of the present year.   It is the case of *Le Bas* v. *Gregory & McCullock*, (10 *Lond. Jur. Rep.* 718;) and it contains a reiteration of the principle embraced in the previous decisions, which I have stated more at length.   I only refer to it, therefore, to show that down to this time the opinion of Sir Herbert Jenner Fust remains unchanged, that where there is an infirmity in the recollections of the attesting witnesses, to a will, as to what took place at the time of its execution, the court does not require positive and affirmative evidence that all the formalities required by the statute were complied with ; but that it will look at all the circumstances of the case, in forming its conclusions of fact on that subject.   It also may be fairly inferred from this recent decision, that none of the numerous decisions in the prerogative court to which I have referred have been overruled or questioned in the court of appeals; which is the judicial committee of

the privy council. The case of *Hudson* v. *Parker*, (1 *Rob. Eccl. Rep.* 24; 8 *Lond. Jur.* 786, *S. C.,*) decided by Dr. Lushington, in July, 1844, and referred to by the counsel for these appellants, upon the argument in the present case, is not in conflict with any of the decisions of the learned judge whose seat Dr. Lushington temporarily occupied; although he evidently doubts the correctness of the decision of the court of common pleas in the case of *White* v. *The Trustees of the British Museum.*

The cases in our own country are also in conformity to these decisions in the ecclesiastical courts in England. In *Jackson* v. *La Grange*, (19 *John. Rep.* 386,) the question arose, as to the due execution of a will, after a lapse of twenty-five years. One subscribing witness was dead. Another, who was examined upon the trial, proved his own signature as a witness, but could not recollect whether all the subscribing witnesses were present. Nor could he remember any of the circumstances attending his own attestation, or the execution of the will by the testator; but he presumed it must have been executed in his presence, from the fact that he had witnessed it. It appearing that the other surviving witness was alive and within the jurisdiction of the court, it was very properly held that he should have been called and sworn. But the late Chief Justice Spencer, who delivered the opinion of the court in that case, said, if the third witness had been called and his recollection had also failed him, still if he could have proved his signature, it would, upon proving the signature of the testator, have been sufficient proof of the due execution of the will to entitle it to be read in evidence; that the law did not require impossibilities, and where a will had been executed a long time, it was not ordinarily to be expected that the witnesses would be able to remember all the material facts.

In the case of *Pate's adm'rs* v. *Joe*, (3 *J. J. Marsh. Rep.* 113,) in the court of appeals of Kentucky, the question arose upon an appeal from a decision of a county court, admitting the will of T. Pate to be recorded, as fully proved. The testator, who lived in Kentucky, went to Virginia, and on his return was taken sick and died on the road. He fell in company with

William Compton and his family, consisting of his wife Polly and his brother Elias E. Compton, and travelled with them; and, being too unwell to ride on horseback, he got into their wagon and rode there. On the night the will was written, he complained of being very sick, and expressed a wish to get to a house where he might write or have a will written. When they stopped a room was procured, and Elias E. Compton was engaged in writing a will for him. The instrument produced for probate was in the hand-writing of Elias, who was then dead, and the name of the testator was also in the same hand-writing. And the will was attested by William Compton and his wife, and by his brother Elias; only two subscribing witnesses being required by the laws of Kentucky. The signatures of the two brothers were in their own hand-writing, but the name of Mrs. Compton, the third witness, was subscribed by her husband. She was examined as a witness, several years after the occurrence, but could recollect nothing of the circumstances except that Pate was sick, and rode in their wagon, and was left on the road. Her husband stated that he had no recollection of having signed his name to the will as a witness, nor any recollection that it was acknowledged before him by Pate, or of seeing his brother write the name of Pate, or that the latter gave any directions to his brother to sign the will for him. He further stated that his habit was never to witness any instrument without seeing the party executing it make his signature, or hearing him acknowledge the instrument; from which circumstance he supposed Pate acknowledged the will in his presence, or he would not have attested it. But under what circumstances he witnessed it he could not recollect; nor had he any recollection of the fact of his signing his wife's name to the instrument as a witness, but he should not have done so without her consent. The will liberated the testator's slaves, when they should attain certain ages; and it fell into the hands of one of the testator's sons, after his death, and was produced by the son, on his being called upon to do so by a bill in chancery. Upon these facts the court of appeals decided that the will was sufficiently proved; and affirmed the decision

of the county court admitting it to probate. (*See also Bailey* v. *Stiles*, 1 *Green's Ch. Rep.* 221 ; *Jackson* v. *Van Dusen*, 5 *John. Rep.* 144 ; *Givin* v. *Radford*, 2 *Litt. Rep.* 137 ; *Alsey Howard's will*, 5 *Monroe's Rep.* 199.) The case of *Burwell* v. *Corbin*, (1 *Rand. Rep.* 131,) cited by the counsel for the appellants, was a decision by a divided court; and was virtually overruled in the subsequent case of *Dudleys* v. *Dudleys*, (3 *Leigh's Rep.* 436.) And Judge Cabell, who concurred in the decision in the case of *Burwell* v. *Corbin*, admitted that the ground upon which he, and two other members of the court, proceeded in that case was wrong ; and that their decision could only be sustained upon the ground that the case came before them in the shape of a special verdict, and that even then it should have been sent back for a new trial. The principle of the several decisions which I have referred to, upon the branch of the case now under consideration, remains unshaken by any conflicting decision of sufficient weight to induce me for a moment to doubt the correctness of such principle.

Applying that principle, to the testimony of the witnesses to this will, I think the evidence was sufficient to authorize the surrogate to find and declare, as a matter of fact, that the instrument propounded was duly executed, by William Jauncey, as a valid will of real estate. There is no pretence that the testator was not in the full possession of all his mental faculties, and perfectly competent to make a testamentary disposition of his estate, with sense and judgment. It does not appear who drew the will. For although it is stated in the answer to the petition of appeal and revivor, that it was wholly in the testator's hand-writing, that fact was not in evidence before the surrogate, and therefore ought not now to be taken into consideration, in determining the question whether he decided correctly upon the evidence before him. But it clearly appears that the testator had in his possession a will, properly prepared for execution, purporting upon its face to dispose of property, to a large amount, in this country and also in the English funds; that when he was alone with his barber, he produced this instrument, and re-

quested the barber to stay and witness his *signature* to it; and that he went to the door of his room and called for the two other subscribing witnesses, who were servants in the house, to come into the room. And he particularly inquired for James Apps, who, as it subsequently appeared, he had understood was intending to return to England, and who, as he said, would be handy to prove his signature there. All this denotes care and deliberation; and shows that the testator himself perfectly understood what he was doing, and that he was undoubtedly aware what was necessary to be done to execute the instrument, produced by him, as a valid will of real and personal estate. It does not distinctly appear whether the testator's name was signed to the will in the presence of Jones, who was the first witness, or had been previously signed to it. But that it was actually there, when Jones attested the will, is evident from his testimony. For he says that the testator, putting his finger on the signature and seal, declared that he acknowledged the instrument as his hand and seal, for the uses and purposes therein mentioned. Jones then subscribed his name as a witness, in the presence of the testator. The other two witnesses came in while Jones was there, and he thinks they also signed their names, as witnesses, in his presence. Jones, who was examined some ten years after the transaction, and when he was about seventy-seven years old, thinks he did not know, at the time the instrument was executed, that it was a will; nor until a year or two afterwards, when the testator told the witness he wished to remind him that he was a witness to his will. That the witness is under a mistake in supposing he did not know that it was the testator's will, at the time it was executed, is evident from the testimony of Robinson, the coachman; the last attesting witness. For he says Jones and Apps were both present when he witnessed it; although he did not see them sign their names, as their names and the name of the testator were there before he came into the room. But he says that when he attested it in their presence, the testator put a pen into his hand, and acknowledged and declared the instrument to be *his will;* and requested him to sign his name

thereto as a subscribing witness, and he did so in the testator's presence. The testator at the same time remarked, that James Apps, one of the witnesses, was going to England, and would be handy to prove the will there, in case it should be necessary. The recollection of James Apps, the groom, appears to be still more indistinct than that of Jones, as to the particulars of the transaction; for he does not remember that any other person than Mr. Jauncey was in the room while he was there. But he does recollect, and testify, that some one told him Mr. Jauncey wanted him in the parlor, that he went up, and he believes that the testator asked him if he was James, and he said yes; that the testator then pointed to a paper on the table, and requested him to sign his name to it as a witness, under that of Jones; and *he did so,* in the testator's presence; and he believes the testator told him, before he left the parlor, that the paper was his will. He also says the testator observed that he understood the witness, was going to England, and if so he would be handy to prove his signature there, as he probably might be wanted for that business in England. Although this witness does not recollect the fact, I have no doubt, from his testimony and that of the other two witnesses, in connection with the circumstances to which I have before referred, that the same formality of acknowledgment was gone through with, when Apps was asked to witness the will, as when Jones and Robinson witnessed it; and that, at the time they attested the instrument, all the subscribing witnesses understood it was the testator's will which they were attesting by their signatures; and that the testator intended to admit that he had signed, sealed, and published it as such.

The sentence and decree of the surrogate, admitting the will to probate, and to be recorded as a valid will of real estate, and the order of the circuit judge of the first circuit, affirming such sentence, must, therefore, be affirmed, with costs.