HORATIO G. ABBEY, appellant, *vs.* HARRIET E. CHRISTY, respondent.

To constitute a valid publication of a will or codicil, the testator must, in the presence of two witnesses, declare the instrument to be his last will and testament, or a codicil thereto. If the proof fails to establish such a declaration, to one of the subscribing witnesses, the instrument should not be admitted to probate.

Where one of the attesting witnesses testified that on entering the testator's room, the latter, taking a paper out of his portfolio, desired the witness to read it, which he did, silently; after which the testator requested him to witness his signature; in answer to a question put by the witness, whether he had read the paper produced, the testator said he had heard it read; and being asked if it was all right, he replied "I think so;" and the other witness testified that when they entered the room the testator remarked that he wanted them to "witness his signature;" that they then put their names to the paper as witnesess; but that "nothing was said whatever, regarding what the paper was, or any thing about it," that the witness never read it, and did not know what it was; *Held* that this was not a sufficient publication.

Of the effect of an attestation clause, as evidence of the due execution of a will.

THIS was an appeal from a decree of the surrogate of the county of New York, refusing probate to certain paper writing propounded by Horatio G. Abbey as the will of Edwin B. Christy, deceased. The facts appear in the opinions of the court.

*Wm. Weston*, for the appellant.

*B. J. Blankman*, for the respondent.

G. G. BARNARD, J. The case of *Seymour* v. *Van Wyck*, (6 *N. Y. Rep.* 120,) is directly in point. That case decides that the testator must, in the presence of two witnesses, declare the instrument to be his last will and testament. In the case at bar such a declaration was not made.

The case in 6 *N. Y. Rep.* and the present case are quite similar in their details ; the health and capacity of the testator in *Seymour* v. *Van Wyck* was about the same as those of the testator in this case ; if any thing a little better.

Abbey *v.* Christy.

In that case one of the witnesses (Caleb Roscoe) testified : " The testator was bolstered up in bed ; he said ' I have sent for you and want you to take notice whether I have sufficient mind and memory to make a will, for I have long wanted to make an alteration in my will, and now I have had Mrs. Seymour to write a codicil to my will.' He asked for the will. The paper was lying on the bed. I said it would require two witnesses. Mrs. Seymour said Caroline See was in the house. He said ' call her.' She was called. A bible was placed on the bed. I handed the pen and ink and he signed the paper, Miss See and myself looking on. He requested me to date it and write what was necessary for the witnesses to sign, and to witness it. I did so, and sub-scribed it as a witness, as did also Miss See, and I folded it up."

The other witness, Miss See, testified : " Testator signed it in my presence, and requested me to witness it. Testator said 'you see I am in my right mind.' I bowed my head. He said ' speak.' I said yes. He said ' I want you to sign your name to that paper.' He was raised up in bed ; called for the paper, pen and ink and put his name to it. Mr. Roscoe signed his name to it, then I put mine ; that was the end of it ; I left the room. He did not, while I was in the room, say it was his last will and codicil, or any thing of that kind. He did not, in my presence, speak the word will or codicil."

The surrogate admitted this will to probate, but the gen-eral term reversed his decision, and the Court of Appeals affirmed the judgment of the general term, with costs to be paid by the appellant.

In the case at bar, one of thee witnesses (Dr. Rogers) testi-fies : " When I entered Mr. Christy's room he called his attendant to pass his portfolio ; he opened it, took out a paper and desired me to read it, which I did. I read it silently. After concluding the reading I asked him what more he wished. He wished me to witness his signature.

I asked him if he had read it; he said he had heard it read. I then asked if it was all right; he replied 'I think so.' His attendant was then called into the room, and he was bolstered up in the bed; the paper was placed upon the back of a portfolio held in his lap, and pen and ink was passed to him."

The other witness (Joseph H. Morrison) testifies : "When we entered the room, Mr. Christy was propped up in bed with pillows ; he remarked that he wanted us, the doctor and myself, to witness his signature. The doctor had the document in his hand, whatever it was ; I don't know what it was ; I never read it. I saw Mr. Christy sign the paper ; the doctor put his name there, and I put mine under his ; nothing was said whatever regarding what the paper was, or any thing about it." At folio 70 he says : "I did not read a single word of the paper." At folio 73, being asked, "Have you any recollection of the precise language that Mr. Christy used in relation to the instrument ; what he called it ?" The witness answered : "The man was too feeble." On the question being repeated he said, "No I could not. I think he asked in as loud a tone as he could, gentlemen I wish you to witness my signature to this paper ; he might have said document. I don't remember. I know he spoke but very few words, because he was not able to speak."

This is all the evidence bearing on the publication of the paper as a will.

The evidence falls just as far short of proving publication to the witness Morrison, as in the case of *Seymour* v. *Van Wyck*, it fell short of proving publication to the witness See.

Conceding that the handing the paper to Dr. Rogers, with a request to him to read it, and his reading it, was a publication as to him, yet it was not a publication as to Morrison, for two reasons ; first, the doctor read it silently so that the witness Morrison, even if at the time in the room, could not by such reading be apprised of its contents or nature, and second, this reading by the doctor was before the testator

was propped up in the bed, and the witness Morrison did not enter the room until after he was propped up, and Dr. Rogers was there before Morrison.

The statement of Dr. Rogers that a messenger came to him stating that Mr. Christy wished him to visit him on the matter relating to the will, is incompetent to prove a publication by the testator. It is mere hearsay testimony. If it is competent at all, it only tends to prove a publication to the doctor alone.

Thus, as under the case of *Seymour* v. *Van Wyck,* the testator must declare the instrument to be his last will and testament to each of the subscribing witnesses, and as under the same case, the proof in this case fails to establish such declaration to one of the subscribing witnesses, the decision of the surrogate in rejecting the instrument, on the ground that it had not been proved to have been properly executed as a will, was correct.

In the cases of *Jauncy* v. *Thorne,* (2 *Barb. Ch.* 40 ;) *Nelson* v. *McGiffert,* (3 *id.* 158 ;) *Orser* v. *Orser,* (24 *N. Y. Rep.* 51 ;) *Trustees of the Theological Seminary of Auburn* v. *Calhoun,* (25 *id.* 422 ;) *Tarrant* v. *Ware,* (*Id.* 425 ;) and *Peck* v. *Cary,* (27 *id.* 1,) cited by the appellant, there was, except in *Orser* v. *Orser,* affirmative proof that the testator declared the instrument to be his will, to each of the subscribing witnesses, and the court held that when such was the case, the will might be established if such proof were sufficient to overcome either the want of recollection on the part of the subscribing witnesses that such declaration was made, or their positive denial that it was made.

In the case of *Orser* v. *Orser,* one of the witnesses was deceased, the other denied that he heard the decedent speak of the paper as his will, but admitted that he heard some conversation between the decedent and the other witness, which he could not remember. The court held that the attestation clause signed by a deceased witness was evidence, to some extent, of the facts stated in it, and that it was error to

limit its force to the deceased witness, as it was also some evidence to contradict the living witness ; and for this error reversed the judgment below.

These cases are not in conflict with the case of *Seymour* v. *Van Wyck,* (6 *N. Y. Rep.* 120 ;) for that case simply decides that the proof there adduced was insufficient to establish a declaration to both witnesses ; and it is shown above that if the evidence was insufficient in that case, it is equally so in the case at bar.

In the case at bar there is no positive proof that the declaration was made to both witnesses, nor any circumstances from which it can be inferred, but on the contrary the proof is clear it was not made to one of them.

The attestation clause may in some cases, (such as death of all the witnesses,) be sufficient of itself to carry a will to probate. In other cases it may be some evidence of due execution, either strong or very slight, according to the circumstances of each particular case ; but in this case its effect must necessarily be slight, and even that effect is dissipated by the circumstances of the case. This will purports to have been executed on the 26th of March, 1866. The testator died April 6th, 1866. The alleged will was presented for probate June, 1866, and the subscribing witnesses were examined in December, 1866.

The quick following of death after the signing of the paper, the short time elapsing between the death and the offer to probate, the not very long period between the offer to probate, and the examination of the witnesses, are all circumstances tending to impress on the witnesses' minds the matter transpiring at the time the paper was signed, and to exclude the theory that their failing to swear to a declaration being made to them is due not to the non-existence of the fact, but their want of recollection.

Now we not only have Morrison distinctly swearing that no declaration was made to him, but the testimony of Dr. Rogers clearly shows that no declaration was made to

Abbey *v.* Christy.

Morrison, nor indeed to himself, except only by the handing to him of the paper to read, and his silently reading it. The particularity of Dr. Rogers' testimony as to what occurred is such, that if any declaration had been made, he would surely have recollected it. The whole evidence was before the surrogate, and we must assume he gave due weight to the attestation clause.

The appellant claims there was error in refusing to permit him to adduce further proof as to the execution of the paper. The return, however, does not show any such refusal. It is true the surrogate, after the proponents had closed their examination of the witness Morrison, stopped the cross-examination, stating that as the execution of the will had not been proved, he would be obliged to reject it. After this intimation of his opinion on the evidence already adduced, the proponents did not offer or suggest that they had any further proof on that subject. We cannot assume, that if they had so offered or suggested, the surrogate would have refused to hear it. On the contrary, we must assume that he would have heard it.

The appellant cannot now, for the first time, suggest that he has further proof, and reverse the surrogate's decision for not receiving proof, the existence of which was not even intimated to him.

The suggestion now made here, for the first time, looks very much as if the proponent knew he had no witnesses whom he dared call, but now makes the intimation to impress the court with the idea that he has been harshly dealt with below.

The surrogate's decree should be affirmed, with costs, to be paid by the appellant.

CLERKE, J. I. I find no evidence in this case to controvert that of Dr. Rogers, who positively testifies that the physical condition of the testator was paralysis, and that " the effect of it upon the mind was to weaken it, in all respects." The

Abbey *v.* Christy.

witness attended him, professionally, in his last illness, from the beginning of March until the 5th or 6th of April, 1866, when he died. The symptoms of mental disease increased to the time of his death. His principal ailment was disease of the brain; which produced such unsoundness of mind as rendered him incapable of making his will. This, I presume, was the conclusion of the surrogate; which, I think, should not be disturbed.

II. I say, I presume this was the conclusion of the surrogate, although it might be inferred from his language, at the trial, that he placed his decision on the ground that the testator had not declared the instrument to be his last will and testament. If this is the ground of his decision, I also think it is correct. In the recent cases referred to by the appellant's counsel, either one of the witnesses testified to the declaration of the testator, or some other person in his presence made it, in effect, for him, or other circumstances occurred at the time of execution, which imported it; but there is no fact, or circumstance, in the present case, from which a publication of the will can be inferred; except that in answer to the question put by Dr. Rogers, whether he had read the paper produced, he replied that he had heard it read. Dr. Rogers then asked if it was all right; he replied, " I think so." This is not sufficient. Morrison, the other witness, who was present all that time, testifies that the testator, when they entered the room, was propped up with pillows, and " he remarked that he wanted us, the doctor and myself, to witness his signature." They then put their names to the paper, as witnesses; " but," he adds, " nothing was said whatever regarding what the paper was, or any thing about it."

The decision of the surrogate should be affirmed, with costs.

LEONARD, J. concurred.

[NEW YORK GENERAL TERM, June 3, 1867. *Leonard, Geo. G. Barnard* and *Clerke,* Justices.]