WILL OF JOHN MEURER.

WILLS: EXECUTION AND ATTESTATION: EVIDENCE: VERDICT. *(1) Effect of verdict in case of disputed will. (2) Proof of signing and publishing will. (3) Proof of attestation: forgetfulness of attesting witnesses. (4) Presumption from certificate of attesting witnesses. (5) When signature of witnesses sufficient without request of testator. (6) What constitutes a subscription in testator's presence. (7) When costs paid out of estate.*

1. The verdict of a jury as to the due execution and attestation of a will is merely advisory, and though, in case of doubt, such verdict is of great weight, and the court, if dissatisfied with it, will usually direct a new trial of the same issues by another jury, yet this is discretionary, and a judgment in opposition to the verdict will not be reversed for want of such direction, *if sustained by the weight of evidence.*

2. Proof that a certain person was called to the house of the deceased for the purpose of preparing his last will, received instructions for that purpose from him, then drafted the will in an adjoining room according to such instructions, called the persons whose names appear as witnesses thereto, to come into the testator's presence for the purpose of witnessing the will, read the will to the deceased in the presence of the witnesses, and

Will of John Meurer.

asked him if he was satisfied with it and could sign it, and that deceased immediately took the pen and signed his name to the paper in the presence of the witnesses, who afterwards subscribed their names to it as such — *held* sufficient to show a due signing and publication of the will.

3. The two witnesses came to the testator's house for the express purpose of witnessing his last will, and the deceased knew that they were there for that purpose. The witnesses also knew that B., who drafted the will, was there for that purpose, and saw him at work upon it. Before the will was read to the testator, they were requested by B. to come into the room where the testator was, for the purpose of witnessing his will, and both went to the door of the room, within a few feet and in plain sight of the testator, and remained there while, according to the testimony of B. and another person then present, the will was read to the testator by B., and signed by the testator; and they were during that whole time so situated as to be able, if paying attention, to see and hear what was done. *Held*, that the *want of memory* of said attesting witnesses (upon a contest of the will), as to what then took place in their sight and hearing, is not sufficient to negative the conclusion that the will was *properly attested* by them.

4. The *certificate* signed at the time by such witnesses, that the testator subscribed the will in their presence, declaring it at the same time to be his last will, and that they subscribed their names at his request and in his presence as attesting witnesses, raises a *presumption* of the truth of the facts so certified, which, in case of the death of the witnesses, would be sufficient to establish a valid execution of the will, upon simple proof of their signatures and that of the testator; and their want of recollection as to facts so certified, when they are called upon to prove the execution of the will, is not alone sufficient to overcome such presumption and justify a denial of probate; much less will such want of recollection defeat the will when there is *other* evidence showing all the facts necessary to a proper execution thereof.

5. If the attesting witnesses sign the will in the testator's presence, without objection on his part, he knowing that they are signing as such witnesses, that is sufficient, without any special request by him that they sign it.

6. After the will was signed by the testator, who was sitting up in bed, in a small bedroom, it was taken into an adjoining room, placed on a table, and there subscribed by the witnesses, the door between the rooms being open, and the table so situated that the testator could see the witnesses subscribing, if he chose to do so, without materially changing his position. *Held*, that this was a subscription *in the testator's presence*.

7. On reversing a judgment for the contestant of a will, his taxable costs of the appeal are ordered to be paid out of the estate; his success below being sufficient evidence of reasonable cause for the contest.

APPEAL from the Circuit Court for *Milwaukee* County.

The case is thus stated by Mr. Justice TAYLOR in his opinion as originally prepared:

"This is an appeal from the judgment of the circuit court of Milwaukee county reversing the order of the county court of said county, admitting to probate the last will and testament of John Meurer, deceased.

"The record shows the following proceedings in the circuit court:

"1. An order of said court dated May 17, 1877, directing certain issues in said action to be tried by a jury.

"2. That a jury was impaneled to try such issues, and the same were tried; but, upon submitting the case to the jury upon such trial, instead of requiring the jury to answer the questions contained in the order of May 17, 1877, the court directed the jury to answer the following question only: 'Was the paper purporting to be the last will and testament of John Meurer, deceased, duly attested and subscribed in the presence of the testator, by two or more witnesses?' To this interrogatory the jury answered, 'Yes.'

"3. Upon the return of the verdict of the jury, the proponent moved the court for judgment in accordance with the special finding of the jury, which was opposed by the contestant; and, after hearing a partial argument thereon, the further hearing was postponed to the June term of the court, June 25, 1877, by consent of the parties; and after a further hearing of the same at said term, the following order was entered: 'And now at this day, 26th day of June, 1877, the court being well and sufficiently advised of and concerning the motion of the proponent made and argued June 22, 1877, it is ordered that the same be and is hereby allowed, and that the will be and is hereby sustained. It is further ordered that the taxable costs in this appeal be taxed against the estate.'

"4. That afterwards the contestant moved to set aside the judgment, and for a new trial; that the motion was denied,

and the contestant excepted to the ruling of the court denying the same; that at the same term, on the request of the contestant, the court withheld judgment for the purpose of hearing further arguments; and that such further hearing was continued until August 12, 1877, when the court took the case under advisement.

"5. That afterwards, on the 19th day of September, being as yet of said June term, the judge made and filed the following findings of fact: '*First*. That the objections to said will are sustained by the evidence. *Second*. That said will was not signed by the testator, and attested and subscribed by two or more witnesses in the presence of the testator.' And as conclusions of law the court finds: '*First*. That the said last will and testament was not duly executed according to law, and that the same is not valid. *Second*. That the order of the county court, admitting said will to probate, ought to be and is hereby reversed. That judgment be entered accordingly, with costs to be taxed and paid out of and by the estate of said John Meurer, deceased.'

"6. That the proponent duly excepted to these findings, except as to the first conclusion of law; and, judgment having been duly entered in said circuit court, reversing the order of the county court and declaring that said will was not duly executed according to law, and was not a valid will, and directing the costs to be paid out of the estate of said deceased, the proponent appealed from such judgment to this court."

For the appellant, a brief was filed by *Cotzhausen, Smith, Sylvester & Scheiber*, and the cause was argued orally by *D. S. Wegg*.

The cause was submitted for the respondent on a brief signed by *Leander Wyman* as attorney, with *Frank B. Van Valkenburgh*, of counsel.

TAYLOR, J. The only objections made by the contestant in

this court against the validity of the instrument purporting to be the last will and testament of John Meurer, were that the evidence does not show:

1. That the deceased, at the time of signing the same, declared in the presence of the witnesses that the same was his will.

2. That it was attested and subscribed by two or more witnesses in the presence of the testator.

The first point was not strongly pressed upon the argument, and it is unnecessary to spend much time in its discussion. The evidence of the witness Bœrenger, who drew the will, shows that he was called to the house of the deceased for the purpose of preparing the last will and testament of the deceased; that he received his instructions for that purpose from deceased; that he then, in an adjoining room, drafted the will according to the instructions given, and called the persons whose names appear as the witnesses thereto, to come into the presence of the deceased for the purpose of witnessing the will; that he then read the will of the deceased in the presence of the witnesses, and asked him if he was satisfied with it, and if he could sign it; and that the deceased immediately took the pen and signed his name to the paper in the presence of the witnesses, who afterwards subscribed their names thereto as witnesses. This evidence undoubtedly establishes the fact that the deceased signed the writing with his own hand, in the presence of the witnesses, with full knowledge of its contents, and intending it to be his last will and testament. If it be necessary that the deceased should declare that the writing so signed was his last will and testament at the time of his signature, in the presence of the attesting witnesses, the circumstances as shown accompanying the signature are a sufficient declaration of that fact. 1 Jarman on Wills, 117, marginal p. 73, and note (c); 1 Redfield, 220, 221, and notes; id., 217, and cases cited in note. " It is a sufficient publication if it be made to appear by competent evidence that the testator was,

at the time of the execution of the instrument, fully apprised of its contents, that he knew it to be his will, and intended it as such." *Swett v. Boardman*, 1 Mass., 258; *Cilley v. Cilley*, 34 Me., 162.

The real objection in this court, and probably in the court below, was, that the instrument was not properly attested by the witnesses, upon two grounds: first, that the witnesses did not see the testator sign the instrument, nor hear him declare that it was his will; and second, because they did not subscribe their names as witnesses in the presence of the deceased.

These questions were the only questions submitted by the court below to the jury, and they found the facts in favor of the validity of the will upon both points. In our opinion, the verdict of the jury was fully supported by the evidence, and the first determination of the learned circuit judge, in directing judgment to be entered in favor of such finding, and adjudging the instrument a valid will of the deceased, was the judgment which ought to have been finally entered in the case, and the reversal of this judgment after the further hearing was clearly against the weight of the evidence, and erroneous. We recognize the fact that the verdict of the jury was simply advisory, and to aid the court in arriving at a right determination of the facts in issue, and not absolutely binding upon his judgment in case he was of the opinion that it was not sustained by the evidence. In a case of doubt, such verdict is entitled to great weight; and usually, instead of finding in hostility to the verdict, if the court is dissatisfied with it, a new trial would be directed upon the same issues by another jury. Such direction of a new trial is in the discretion of the court, and a judgment would not be reversed for want of such direction, if the judgment rendered in opposition to the verdict was sustained by the weight of evidence.

A brief statement of the evidence will show that there can be no fair doubt but that the will in question was properly attested by the witnesses. The evidence is conclusive that the

witnesses O'Driscoll and Lyman came to the house of the deceased for the express purpose of being witnesses to his last will and testament; they both swear to this fact. It is also fairly inferred from the evidence that the deceased knew they were there for that express purpose. It also shows that they knew that Bœrenger, the other witness, was there for the purpose of drafting the will, and saw him at work upon it; that, before it was read to the deceased, they were requested by Bœrenger to come to the room where the deceased was, for the purpose of witnessing his will; that they both came to the door of the room, within a few feet of and in plain sight of the deceased, and remained there whilst Bœrenger read the will, and whilst the same was signed by the deceased. Both these witnesses and the witness Bœrenger swear that they were in hearing and sight of the deceased when the will was read to him and when he signed the same, and could, if paying attention to what was being done, both have heard what was said, and seen what was done; and, they having been called there for the express purpose of hearing and seeing what was done, it is a fair and just presumption that they did both hear and see. Their present want of memory as to what then took place in their sight and hearing does not negative the conclusion which is to be legitimately drawn from the facts admitted to exist at the time; especially as this conclusion is fully supported by the evidence of the witness Bœrenger and the witness Mary Eigner. This last witness swears positively that the will was read to the deceased, and that he was asked if it was his will; that she stood farther from the deceased than either of the other witnesses, and where she would not be as likely to hear and see as they, and yet she heard what the other two witnesses now state they have no recollection of. The evidence of this witness also very clearly shows that the deceased knew that these men, O'Driscoll and Lyman, were there for the purpose of witnessing his will.

In addition to this proof, these two men at the time signed

a certificate in writing that the testator subscribed the will in their presence; that it was at the same time declared by him to be his last will and testament; and that they subscribed their names at his request and in his presence, as attesting witnesses. Their subscription of this certificate raises a presumption that the testator did declare at the time that the paper so subscribed by him was his last will and testament, and that they signed the same at his request and in his presence. In case of the death of all the witnesses, this presumption would be sufficient to prove the valid execution of the will, upon simple proof of the signature of the testator and of the witnesses. The want of recollection of the witnesses as to these facts, when called upon to prove the execution of the will, would not, standing alone, be such evidence of a non-compliance with the requirements of the statute as to justify the court in refusing the probate of the will; much less would such want of recollection defeat the will when there was other evidence showing that all the acts necessary to a proper execution of the will were in fact performed. _Remsen v. Brinckerhoff_, 26 Wend., 338–9; _Kirk v. Carr_, 54 Pa. St., 285.

No special request by the testator to the witnesses to sign the will as witnesses thereto, is necessary. If they sign in his presence, and without objection on his part, he knowing the fact that they are signing as witnesses, it is sufficient. _Huff v. Huff_, 41 Ga., 703; _Brown v. De Selding_, 4 Sandf., S. C., 10; _Peck v. Cary_, 38 Barb., 77; _Coffin v. Coffin_, 23 N. Y., 9.

The evidence upon the point as to whether the will was subscribed by the witnesses in the presence of the testator, is quite full and satisfactory. It shows that the testator was sitting up in his bed in a small bedroom, the door of which was open; and that, after the will was signed by the testator, it was taken into the room adjoining the bedroom, and placed on a table, and there subscribed by the witnesses. The clear preponderance of the evidence is, that this table was so situated in the adjoining room that the testator, sitting in his bed,

could see the table and the persons sitting at the same.    The fact that the witnesses subscribed in an adjoining room, and not in the room where the testator was, is wholly immaterial, so that it appears it was done in his view.    It is not necessary that the evidence should show that the testator in fact saw the witnesses subscribe their names; it is sufficient if he could have seen them from the place where he was sitting.    In other words, if the testator be in a position where, by the mere act of volition, and without materially changing his position, he can witness the attestation, it is sufficient.    1 Redfield on Wills, 247, note, and cases there cited.

The conclusions which we have drawn from the evidence in this case are also supported by the fact that the learned county judge admitted this will to probate upon the unsupported evidence of the witness Lyman, who, on the trial in the circuit court, was not disposed to admit that he knew but very little about what occurred at the time the will was attested by him.    It would be unjust to the learned county judge to suppose that every fact necessary to the perfect execution and attestation of the will was not sworn to by the witness Lyman on the probate of the will before him.    If there had been any hesitancy at that time on the part of the witness Lyman, it is reasonable to believe that the county judge would not have admitted the will to probate without having first summoned the other attesting witnesses.

The learned circuit judge, in his review and final determination of the case, finds generally " that the objections to said will are sustained by the evidence."    It is quite clear, however, that he intended to limit this general finding to the two objections which we have considered, and not to the written objections made by the contestant as her grounds of appeal from the order of the county judge, from the fact that as to at least two of these objections there was no pretense of evidence to support them.    I refer to the objections " that the will was procured by fraud and undue influence," and " that the testa

tor was not of sound mind, and was not capable of making a will." It is also evident from the second finding of fact, the question submitted to the jury, and from the whole record of the case, that the controversy was limited to the questions relating to the attestation of the will by the witnesses, and no other. We infer from the fact that the learned circuit judge who tried this case, also tried the case of *The Will of Susan Jenkins*, and from his written opinion contained in the record of the last named case, that he probably based his final judgment in the case at bar on the same grounds that controlled his decision in the Jenkins case, viz.: that unless two of the attesting witnesses to a will concur in their testimony, and each testifies to all the material facts necessary to show that the will was properly attested, it cannot be admitted to probate. This opinion of the learned circuit judge was held to be erroneous by this court in the case of *The Will of Susan Jenkins*, 43 Wis., 610. The ruling of this court in the Jenkins case is fully sustained by the authorities. See *Tarrant v. Ware*, 25 N. Y., 425, and the authorities cited in the opinion delivered in that case. In the case of *Gove v. Gawen*, 3 Curteis, 151, one of the witnesses deposed that the will was not signed by the testator in his presence, but the other witness proved a full execution in the presence of both. The will was established upon circumstances showing the stronger probability of the accuracy of the last mentioned witness. In *Chambers v. The Queen's Proctor*, 2 Curt., 415, and *Blake v. Knight*, 3 id., 549, the same rule is followed. In the case of Chambers, two out of the three witnesses swore that the will was not signed by the testator in their presence, and yet the will was admitted to probate on the circumstances, and the positive testimony of the other witness. The case of *Jauncey v. Thorne*, 2 Barb. Ch., 40, was a much stronger case than the case at bar against the validity of the will, and yet it was admitted to probate. Chancellor WALWORTH, in his opinion in that case, makes the following very appropriate remarks: "It

is a very different question, however, whether, to sustain and establish the validity of a will, the courts should hold it necessary for the subscribing witnesses to recollect and testify to the fact that all the formalities prescribed in the statute were actually complied with. For if this were required, very few devises of property would be supported unless the testimony of the witnesses was taken and perpetuated soon after the wills attested by them were made. This in many cases would be wholly impracticable, as the testator frequently lives many years after he has executed his will. And where there is good reason to suppose the will has been duly executed, and that no fraud or want of testamentary capacity existed at the time it was made, justice to the dead, as well as to the living, requires that the declared wishes of the testator should not be defeated by the imperfect recollections of attesting witnesses; or by reason of their deaths or removal beyond the jurisdiction of the state. It is for this reason that the most liberal presumptions in favor of the due execution of wills are sanctioned by the courts of justice, when, from lapse of time or otherwise, it may be impossible to give positive evidence on the subject. A will may therefore be sustained even in opposition to the positive testimony of one or more of the subscribing witnesses, who, either mistakenly or corruptly, swear that the formalities required by the statute were not complied with, if, from other testimony in the case, the court or jury is satisfied that the contrary was the fact."

The probate of a will is not to be rejected because some of the attesting witnesses are unable or unwilling to swear to the facts necessary to prove a full compliance with the statutory requirements. Like any other fact, the valid execution of a will may be proved by the preponderance of evidence, given by the attesting witnesses; and perhaps, in a case where it is admitted that the instrument was in fact signed by a sufficient number of persons as attesting witnesses, the will might be admitted to probate, although all the persons so signing should,

from forgetfulness or other cause, be unable or refuse to testify to the facts necessary to prove a valid execution, on the evidence of other witnesses than those whose names were subscribed thereto. *Goodtitle v. Clayton*, 4 Burr., 2224; *Windham v. Chetwynd*, 1 id., 414; *Lowe v. Jolliffe*, 1 Wm. Bl., 365. If there be any doubt upon such a case, there can be no doubt that when the attesting witnesses swear to facts sufficient to sustain the validity of the will, it is immaterial that some of them refuse or are unable to testify to all the facts necessary to a valid execution. It then becomes a simple question of the preponderance of the evidence. In the case of *Jauncey v. Thorne, supra*, the point was made by the contestant, that each of the witnesses to the will must corroborate the others as to the facts necessary to the valid execution of the will; in other words, that each witness must be able to show that all the requisites of the statute in force at the time of the execution were complied with; and to this point the chancellor replied as above quoted.

The evidence in this case satisfies us that the will was executed and attested so as to make it a valid will; and we think the record also shows that such would have been the opinion of the learned circuit judge who tried the case below, had he not believed that it was necessary that at least two of the attesting witnesses should each testify that all the requisites of the statute were complied with, in order to prove the valid execution of a will.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded with directions to the circuit court to enter judgment affirming the judgment of the county court, and declaring the said instrument to be the last will and testament of said John Meurer, deceased.

The respondent's having succeeded in the circuit court is sufficient evidence that she had reasonable cause for contesting the validity of the will; and it is therefore ordered that her taxable costs of this appeal be paid out of the estate of the deceased.