# CASES DETERMINED

## *January Term, 1882.*

---

### DEAN and another, Executors, vs. DEAN and others.

*November 28, 1881 — January 10, 1882.*

WILLS. *(1) Will construed: "Capital" as distinguished from accrued ana undivided profits. (2) Costs in actions for construction of wills.*

1. By articles of copartnership between N. D. and T. D., as modified soon after by written agreement, each was to put, and each did in fact put, $20,000 as capital into the partnership business. By those articles, also, each was entitled to draw out annually his share of the annual profits. None of the "capital" of the firm, nor any of the "accrued but undivided profits," were to be used by the parties except in the business; and, at the dissolution of the firm, each was to draw out the amount of "capital" originally contributed by him, less his share of the losses, if any, and the remainder of the assets was to be divided between them in the manner prescribed for division of profits. A codicil added to N. D.'s will just before his death provides that his executors shall leave in said business, for two years, all his "present capital" therein, and that at the end of the two years they shall receive from T. D. one-half of the net value of his (the testator's) interest in the business, and thereupon execute to T. D. the necessary assignments and conveyances to vest in him all the testator's right, title and interest in said business; the intention being declared to be to vest in T. D. the testator's "entire interest in said business, subject to the limitations and restrictions aforesaid." At the time of N. D.'s death his assets in said business were about $43,000, of which about $23,000 were accumulated and undivided profits, in the form of real property, lumber, notes, etc. *Held*, that the fund which the executors are required to leave in said business for two years is only the $20,000 first above named; there being, in the judgment of

this court, no sufficient proof that the remaining $23,000 had ever been capitalized by agreement of the parties.

2. The suit being by the executors for a construction of the codicil, and the appeal by residuary legatees, *held*, that there was no error in directing the costs of the plaintiffs and of the defendant T. D., and also the costs of the other defendants as between attorney and client, to be paid out of the estate generally, and not out of the assets of the estate in said partnership business; the amount of the residuary fund being necessarily affected by the result of the suit.

APPEAL from the Circuit Court for *Dane* County.

This action was brought by *John S. Dean* and *Lansing W. Hoyt*, as executors of the last will and testament of Nathaniel W. Dean, to procure a construction of the codicil to said will. All the legatees named in the will, viz., *Harriet H. Dean*, Harriet D. Sterling, *Thaddeus Dean*, Anna W. Huntley, and *Maria M.*, *Irving W.* and *Adelaide Dean*, were made defendants.

Three answers were filed: one by *Thaddeus Dean*, one by *Harriet H. Dean*, and one by Anna W. Huntley and *Maria M.*, *Irving W.* and *Adelaide Dean.* The contents of the answers need not be stated. The defendant Harriet D. Sterling did not answer.

The provisions of the codicil in question, and those of the will so far as they are deemed important here, and the facts in evidence as understood by this court, are sufficiently stated in the opinion.

The circuit court held and adjudged that it was the true intent and construction of the codicil in question, "that the entire sum and interest belonging to said Nathaniel W. Dean in the partnership of Dean Brothers, and represented on the books thereof by the credits in his favor, amounting to $43,478.16, should remain invested and in use in the business of said partnership, during the two years next succeeding his death, to aid in carrying on the same; that the plaintiffs, as executors of the last will and testament of said deceased, should during said two years settle for, demand and collect

annually one-third of the net profits of said business for the benefit of the estate of said deceased, but that they were not to collect or receive during that time any portion of the said $43,478.16; that at the end of said two years the plaintiffs, as such executors, are to have a full accounting with the defend- ant *Thaddeus Dean* in relation to the said business of Dean Brothers up to the time of the death of the testator, and that thereupon they are to receive from him, if he shall pay the same, one-half of the net value of the interest of the said deceased in said partnership and business, and, upon the same being paid, the plaintiffs, as such executors, shall execute and deliver to said defendant *Thaddeus Dean* all proper and necessary assignments and conveyances to vest in him absolutely all the right, title and interest of the testator in and to said business, and the property, rights and assets thereunto belonging;" and that "it was the true intent and meaning of the said testator, by said codicil, to devise and bequeath to the said defendant *Thaddeus Dean* one-half of his entire interest in said business and partnership, subject to the limitations and restrictions aforesaid, in addition to the bequest theretofore made to him in and by said will." The court further ad- judged "that the costs of the plaintiffs, of the defendant *Thaddeus Dean*, and of the defendants *Harriet H. Dean*, Anna W. Huntley, *Maria M. Dean, Irving W. Dean* and *Adelaide Dean*, as between attorney and client, be paid out of the estate of the said testator in the hands of said plaintiffs, the five last named defendants to be allowed but one bill of costs."

From this judgment the defendants *Harriet H. Dean*, *Maria M. Dean, Irving W. Dean* and *Adelaide Dean* ap- pealed.

For the appellants there were briefs by *Lamb & Jones*, and oral argument by *Mr. Lamb:*

1. By the words "my present capital," in the codicil, the testator did not refer to something that would fluctuate from

month to month or from year to year as his interest in the assets of the firm would inevitably do, but to something which he assumed was known and certain, not needing any explanation, and which would be the same in one, two or three years after the codicil was made, as it then was.   The capital fixed by the articles of partnership, as changed by the three letters, was the only capital that could satisfy these necessary conditions.   The thing which the executors were authorized by the codicil to allow to remain in the business for two years after the testator's death, was not the capital or assets which he might have at his decease, but only his then present capital — that which he had when the codicil was made.   The rule that the will speaks and operates from the testator's death, is never applied where the language of the will refers to an actually existing state of things.  1 Redfield on Wills, 380, 381; *Cole v. Scott*, 16 Sim., 259; O'Hara on Wills, 18; *Cockran v. Cockran*, 14 Sim., 248.   The claim of *Thaddeus Dean* confounds all distinction between capital and profits, and would make accrued profits capital by mere silence of the parties.   But the testator, in the very sentence in which the words "my present capital" are used, directs what shall be done with profits and net profits of the business, and discriminates between capital and profits with clearness and precision.   See *Sparrow v. Josselyn*, 16 Beav., 135.   The rule that in equity partners may be held to have modified their written articles of partnership by courses of dealing, is not a rule primarily applicable in the construction or enforcement of agreements.   It is only when it is clearly shown that parties have so wholly ignored the provisions of their written agreement that the court can safely say they never intended to enforce them, that it is adopted and enforced, and then only to prevent wrong and failure of justice.   It is never applied for the purpose of preferring one legatee against the legal heir or against another legatee.   Had there been no codicil, the partnership business must have ceased at the death of the testator.  Parsons on

Dean and another, Executors, vs. Dean and others.

Part., 388–394, 438, 443, 447; *Darling v. March*, 22 Me., 184. Every provision for its continuance was of grace, and could not have been had of right. There is, therefore, no hardship or injustice here to the surviving partner, to be prevented by holding the articles modified. 2. The widow of the testator was his sole heir-at-law, and entitled, if he died intestate, to inherit the entire estate. The heir is not to be disinherited without an express devise or necessary implication. If the construction is doubtful, the law leans in favor of a distribution as conformable to the general rules of inheritance as possible. *Lynes v. Townsend*, 33 N. Y., 561; *Van Kleeck v. Reformed Dutch Church*, 6 Paige, 600; *Areson v. Areson*, 3 Denio, 458; *Roe v. Blackett*, Cowp., 235; 1 Bro. C. C., 441; *Moon v. Heaseman*, Willes, 141; *Hay v. Earl of Coventry*, 3 Term, 83, 86; *Moor v. Denn*, 2 Bos. & Pull., 247; *Wheaton v. Andress*, 23 Wend., 452; Williams on Executors, 1166 (1088), note; *France's Estate*, 75 Pa. St., 220; *Amelia Smith's Appeal*, 11 Harris, 9; *Quinn v. Hardenbrook*, 54 N. Y., 83; *Van Kleeck v. Dutch Church*, 20 Wend., 457; *Bender v. Dietrick*, 7 W. & S., 284; 12 Ga., 155; 35 Pa. St., 393; 2 Jarman on Wills, 741. 3. The costs, as between attorney and client, should be paid out of the fund in controversy. When a particular and separate part of a testator's estate involves the construction of his will, the expense of ascertaining the proper construction of that part of the will relating to such separate portion of the estate, must be borne by that portion, and not by the general estate, or the residue. 1 Redf. on Wills, 495, 496; *Martineau v. Rogers*, 8 DeG., M. & G., 328; *Att'y General v. Lawes*, 8 Hare, 32; *Jenour v. Jenour*, 10 Vesey, Jr., 562.

For the respondent *Thaddeus Dean* there were briefs by *Pinney & Sanborn*, and oral argument by *Mr. Pinney:*

1. The ninth and tenth clauses of the partnership articles, as to the amount each partner was to be at liberty to draw out each month, and as to paying over annual profits when ascer-

tained, were never acted upon or put in use. Each of the partners from time to time drew out such sums as he saw fit, and left, so far as he could, all funds' and means in the business in order to carry it on more successfully and profitably. At the end of each year, when the year's profits were estimated and apportioned, the share of each partner was carried to his credit upon the account of his contributions. These estimated profits consisted, in fact, of goods and chattels, notes and real estate belonging to the firm, in an undivided condition, and were left in the business in order better to carry on and extend the same. These clauses have therefore been waived by the course of dealing of the parties, and by their mutual acquiescence for years, and it would be inequitable now to put them in force. The articles should be read as though such clauses had been expunged. Story on Part., § 191; Collyer on Part., §§ 209, 210; Parsons on Part., 238; *Const v. Harris*, Turn. & Russ., 496, 523; *England v. Curling*, 8 Beav., 129; *Coventry v. Barclay*, 2 DeG., J. & S., 327; *Jackson v. Sedgwick*, 1 Swanst., 460. That portion of the estimated profits, declared before the testator's death, and carried to his credit, which he allowed to remain in the business as a basis of carrying it on, had become capitalized, and must be taken and regarded as capital. *Straker v. Wilson*, L. R., 6 Ch. App., 503, 510; *Parsons v. Hayward*, 4 DeG., F. & J., 478. It is not necessary that there should have been any express resolution or agreement of the partners to accomplish this result, nor that these sums thus credited and used should have become technically and at law a part of the capital of the firm. It is enough that it appears that they are advances by one partner for the use of the firm in its business, and have been so dealt with and regarded. Such sums pass under the name of " capital." *Bevan v. Attorney General*, 4 Giffard, 361; *Terry v. Terry*, 33 Beav., 232. These sums, therefore, fall within the designation of " my present capital," in the codicil, which the testator directed to remain in the business for two years after his decease. By

" present capital " he meant all that would be coming to him at the time of his death, and from death the will was to speak and operate. Of this meaning there can be no doubt, after the explicit designation of the extent of the bequest, as " one-half of my entire interest in the business," three times repeated in the codicil.   2. This is not a controversy between a legatee and heirs as such.   The widow cannot claim or take a single item of the estate as heir or by descent.   She and her co-legatees take under the residuary clause of the will.   She is before the court as a legatee, insisting on the will, and there is therefore no question in this case as to disinheriting heirs.   3. The costs were properly charged against the estate.   This is not a case where the legacy has been so severed from the general estate that the latter is not affected by the suit.   As this controversy is decided one way or the other, the general estate will be correspondingly increased or diminished.

For the executors there was a brief by *Sloan, Stevens & Morris*, and oral argument by *Mr. Sloan*.   They argued in general support of the view taken by the appellants.

COLE, C. J.   This action is brought by the plaintiffs, as executors, to obtain a construction of the codicil to the will of N. W. Dean, who died February 28, 1880.   The will was dated February 29, 1876, and makes a full disposition of the testator's estate, both real and personal.   After the payment of certain legacies named, the testator directed his executors to divide the rest and residue of his estate into six equal parts, which were to be paid to the persons named, in the proportions specified.   The testator expressed the wish, in the last clause of the will, that his estate should be closed up as rapidly as the best interests of the estate would permit, and that all of the legacies (except one) should be paid as soon as funds could be realized for their payment.   There is no controversy as to the proper construction of the will, and we need not further give its provisions.   The codicil bears date February 23, 1880.   On

May 1, 1871, the decedent and his brother *Thaddeus Dean* entered into partnership in the business of dealing in lumber in the city of Chicago, which partnership was continued to the death of N. W. Dean.   The will makes no express reference to this partnership business.   But the codicil, after reciting that this partnership business had hitherto been profitable to the testator, which was largely due to the business capacity and integrity of his brother *Thaddeus*, contains this language: "And being desirous of showing my appreciation thereof, and that the business so commenced should be maintained and carried on, I hereby direct my said executors to allow my present capital in said business to remain for the period of two years after my decease, collecting and receiving annually, from my said brother *Thaddeus*, the net profits arising from said business, under my agreement with him, belonging to me, for the benefit of my estate.   At the expiration of two years, it is my will and I direct that my said executors have a full settlement and accounting with my said brother *Thaddeus* in relation to said business, and that thereupon they collect and receive from him one-half of the net value of my interest therein, and, upon the payment by him of the one-half value so ascertained, I instruct and direct my said executors to execute and deliver to him all proper and necessary assignments and conveyances so as to vest in him absolutely all my right, title and interest in the business aforesaid; it being my intention, in addition to the bequest heretofore made to him in my said will, to bequeath and devise to him one-half of my entire interest in said business, subject to the limitations and restrictions aforesaid."

The articles of copartnership, to which reference is made in the codicil, are quite full and specific.   They provide, among other things, that each partner should contribute $15,000 to the capital of the firm, which was to be used in carrying on the copartnership business; that *Thaddeus Dean* was to have the management of the business; and that he should be en-

titled to receive two-thirds of the profits, and N. W. Dean one-third thereof. The losses were to be borne in the same proportion. · Books of account were to be kept, wherein all of the transactions of the firm should be entered, which books should be open to the inspection of each partner at all times. By the ninth clause it was provided that N. W. Dean was to take out of the cash of the company's funds $125 per month for his own use, and *Thaddeus Dean* $250 per month, providing these sums could be so drawn out by the respective parties without impairing the capital of the firm; but neither partner was to take a greater sum for his own use during any month without the written consent of the other. The tenth clause provided that *Thaddeus Dean*, at the end of each year, and oftener, if need were, on request, should make and render to N. W. Dean a just and true account of all the gains and profits, as well as losses, of the business, and of all things done on behalf of the partnership; and, this account being so made, he was to pay N. W. Dean his proportionate share of the profits, and take to himself his own share. In the eleventh clause it was provided that during the continuance of the co-partnership none of the capital of the firm, nor any of the accrued but undivided gains and profits' thereof, should be used or employed by the parties thereto for any other purpose than carrying on said business; in the twelfth, that at the end of the copartnership a final accounting should be had, and all the debts of the firm should be first paid, and then each should draw out the amount of capital originally contributed by him, diminished by his proportionate share of losses, if any; the balance, if any, to be divided as provided for dividing profits. These are the material provisions of the copartnership agreement.

·From three letters which were introduced on the hearing — one written by *Thaddeus Dean*, the other two by N. W. Dean — it appears that each party agreed, in July, 1872, to increase his capital to $20,000, and did so. And it further appears,

from the annual statement made of the partnership business, that at the end of each partnership year each partner was credited on the books of the concern with his share of the profits, and was charged with the amount which he had drawn out during the year. The accumulated but undivided profits of the business consisted almost wholly of real estate, lumber, notes, book accounts, and other personal property belonging to the firm. The amount standing to the credit of N. W. Dean at the time of his death, including his capital of $20,000, was $43,478.16. Or, to speak more accurately, that sum embraced the profits standing to the credit of N. W. Dean on the books of the firm at the time of his death, and also the unascertained profits which had accrued since the last annual statement of May 1, 1879, down to that time.

The question arising upon the codicil, which the executors request the aid of the court in determining, is, what is the amount which they must leave in the partnership business for two years, and which, at the end of that period, they are directed to assign and convey to *Thaddeus Dean* upon his paying one-half of its ascertained net value; the annual profits having been collected by them in the mean time. On the part of the residuary legatee *Thaddeus Dean*, it is claimed, that it was the intention of the testator that his entire interest in the partnership business should remain in the business, including both his capital of $20,000 and all accumulated but undivided profits belonging to him under the partnership agreement; while, on the part of other residuary legatees, it is insisted that it was his capital only which was to be left in the business. Considerable proof was taken on the hearing relating to the acts of the parties and their course of dealing, for the purpose of aiding the court in arriving at the intention of the testator in making the codicil. But, aside from the articles of copartnership, this evidence furnishes but little assistance in construing the codicil. The intention of the testator must therefore be ascertained from the language of the codicil

itself, read, of course, in the light of the written agreement to which it refers.

On looking at the language of the codicil itself, the first thing which will be noticed is, that the testator, in the introductory part, speaks of his "*interest*" in the business, which has been profitable to him. Being desirous that the business so commenced should be maintained and carried on, he directs his "executors to allow *my present capital* in said business to remain for the period of two years after my decease, collecting and receiving annually from my said brother, *Thaddeus Dean*, the net profits arising from said business, under my agreement with him, belonging to me, for the benefit of my estate." It will be seen that the mind of the testator was fixed at the outset upon his entire interest in that business as distinguishable from his capital therein. If he intended that his entire interest should remain, it is singular that he changed his language, using words which convey a different meaning. The terms "interest" and "present capital" are not equivalent expressions, and do not convey the same idea in the connection in which they are used. If the testator intended that his entire interest in the business should remain, it is remarkable that he changed his phraseology. But this is not all. The executors are directed to collect annually from his brother Thaddeus the net profits arising from the business under the partnership agreement, which belonged to him, for the benefit of his estate. If the codicil is construed, as it must be, in connection with the partnership agreement, there is no difficulty in getting at the intention of the testator, for the agreement makes a plain and broad distinction between capital and profits. The former is devoted to the partnership business, but provision is made for withdrawing the latter from time to time. Therefore we think the word "capital," as used in the codicil, must be understood as meaning the same thing as when used in the agreement; it means the capital as opposed

to profits, and the word "profits". means the gains upon the capital invested in the business.

The testator further directs that when a final settlement is made or accounting had, the executors shall convey to his brother, upon payment by him of one-half of its ascertained value, all his right, title and interest in the business, declaring that it is his "intention, in addition to the bequest heretofore made to him in my said will, to bequeath and devise to him one-half of my entire interest in said business, subject to the limitations and restrictions aforesaid." If the qualifying words, "subject to the limitations and restrictions aforesaid," were omitted, this clause of the codicil would tend strongly to warrant the inference that it was the intention of the testator that his entire interest in the business should remain for two years, and then be disposed of as directed. But, as the clause stands, in view of the previous language, where the words "interest" and "capital" are used in a different sense, more especially in consideration of the fact that the whole codicil is to be construed in connection with the written agreement, no such inference or presumption can fairly be made; for the agreement, in its terms, so clearly and distinctly discriminates between capital and profits that it is impossible to hold that the testator, by the words "my present capital," intended to. designate not only the capital proper which he had contributed to the business, but also all the accumulated and undivided profits which had accrued from the use of that capital. If he had intended to direct that his whole interest in the business should remain two years, or if he regarded his entire assets therein as capital, his intention or understanding would have been made manifest by the use of language different from that employed.

But, as observed by counsel who argue in favor of the view we have taken of the meaning of the codicil, the testator, in the very sentence in which the words "my present capital"

occur, directs what shall be done with the "net profits" of the business, and pointedly makes a distinction between capital and profits, thus showing that the two things were separate in his mind. The intention of the testator must prevail, if it is possible to gather it from the language of the entire codicil. That intention was to allow his capital to remain in the business two years, but nothing more. This construction of the codicil is vigorously combated by the learned counsel for *Thaddeus Dean*, because, as he says, if the accumulated profits of the parties were withdrawn it would so cripple the business that it could not be carried on with the success and profit which had theretofore attended it. But this argument, under the circumstances, is entitled to but little weight; for, if there had been no provision for continuing the business, it would have had to be closed up on the death of N. W. Dean. Its continuance, therefore, was a favor, and could not have been claimed as a right by the surviving partner.

But the same counsel further insisted that the written agreement had been essentially modified or changed in some of its provisions by the acts and course of dealing of the parties. He says the proof shows that the accrued but undivided profits which stood to the credit of the partners on the books of the firm had been converted into capital, or had been treated as capital, so that they would be included in the phrase "my present capital," as used by the testator. We do not think this position is sustained by the proofs in the case. It was certainly competent for the parties to modify or entirely set aside the provisions of the written agreement. But what is the evidence that they did so? In respect to the amount which each partner contributed to the capital of the firm, there was undeniably a change. The provision for drawing out the profits monthly does not seem to have been acted on at all. The same remark is true in respect to the tenth clause of the articles, which bound *Thaddeus Dean*, at the end of each year, to pay N. W. Dean his share of the profits, and take to

himself his own share. But we fail to find any proof which warrants the assumption that the accrued but undivided profits were converted into capital, whether by express agreement or by long acquiescence of the parties. On the contrary, we have no doubt of the right of the partners to withdraw these profits from the business whenever they chose to do so. The business was very profitable; these profits could be advantageously used in it; and the parties permitted them to be so used when not withdrawn. But the annual statements show that the testator, in the eight full years which the partnership continued, over-drew his profits in three of the years, the last time being the last full year. Also that *Thaddeus Dean* overdrew his profits in five out of the eight years, including the last year. In view of these well-established facts, what becomes of the conten-tion of *Thaddeus Dean?* The burden obviously was upon him of showing, by clear and satisfactory evidence, that the partnership articles had been modified or laid aside; that the provision in regard to the amount contributed by each partner to the capital stock had been superseded; that undivided gains and profits had been transformed into capital; that all this was so well understood by the parties, that when the testator speaks of "my present capital" we must presume he meant his en-tire interest, including both capital and profits; and that when he directs that the "net profits" arising from the business should be annually collected from *Thaddeus Dean,* which belonged to him "under my agreement with him," he referred to some agreement other than the written one. For to this extent does the claim of *Thaddeus Dean* go; and it seems to us quite un-tenable. It is true, as we have remarked, that the profits not withdrawn by the partners were used in the business. But this was entirely consistent with the eleventh clause of the agreement, which contemplates such use. But that falls far short of proving that the profits were capitalized either by ex-press agreement or by the silent acquiescence of the parties. We have examined all of the authorities relied on by the

learned counsel in support of the position that profits declared and credited on the books of the firm to each partner may be so treated as to fall within the designation of capital; but they throw little light on the question before us.   We do not deem it necessary or useful to specially notice these authorities, as the views which we have expressed as to the proper construction of the codicil do not conflict with any doctrine or principle laid down in them.

The only other matter we deem of sufficient importance to be noticed, is the question of costs.   The circuit court adjudged that the costs of the plaintiffs and of the defendant *Thaddeus Dean*, and also the costs of the other defendants as between attorney and client, be paid out of the funds of the estate; the five last-named defendants to be allowed but one bill of costs.   The counsel for the last-named defendants insists that this is inequitable; that the costs should be paid out of the assets of the estate in the partnership business.   He says that it was only that fund which was in controversy, therefore it should bear the whole expense of the litigation. The cases of *Att'y Gen. v. Lawes*, 8 Hare, 32; *Martineau v. Rogers*, 8. DeG., M. & G., 328; *Jenour v. Jenour*, 10 Vesey, Jr., 562, are relied upon in support of this position.   These cases do recognize and apply the rule that where the litigation relates to a legacy which has been severed from the bulk of the estate, that particular fund, and˙ not the general estate, is chargeable with the costs.   But that rule cannot apply here, for reasons suggested by the opposing counsel.   This is not a case where the legacy or matter in litigation has been so severed from the general estate that the general estate is not affected by the suit.   The residuary fund to be distributed is increased or diminished as one construction of the codicil or the other is adopted.   Our construction makes that fund more than it would be under the decision of the circuit court.   It seems to us there is no reason for departing from the rule laid down in *Heiss v. Murphey*, 43 Wis., 45; *Will of Meurer*, 44

Wis., 392; and *Dodge v. Williams*, 46 Wis., 72, where the costs were paid out of the estate.

It results, from the views expressed, that the judgment of the circuit court, placing a construction upon the codicil, and giving directions to the executors in regard to the proper execution of their trust, is erroneous. The judgment must therefore be reversed, and the cause remanded with directions to enter a judgment in accordance with this opinion.

*By the Court.*— So ordered.[1]

---

[1] On the 5th of April, 1882, the following order was entered in the above cause, in this court:

"Upon motion of the appellants by their attorneys: It is now here ordered and adjudged by this court that the costs to be awarded by the circuit court to be paid out of the assets of said estate to the several parties to this action who have appeared herein, be and are hereby restricted to taxable costs and disbursements, and but one bill of costs and disbursements be allowed to the parties, *Harriet H. Dean, Maria M. Dean, Irving W. Dean,* and *Adelaide Dean,* who appeared by the same counsel; but this direction is not intended to embrace or control the matter of fees which said executors shall pay their counsel, etc. A copy of this order to be attached to the opinion and returned with the remittitur."