IN RE ESTATE OF MARIE HAUGK, Deceased: LUTHERAN CHILDREN'S FRIEND SOCIETY, and another, Appellants, v. Horst O. HAUGK, Personal Representative of the Estate of Marie Haugk, Deceased, Respondent.

Supreme Court

*No. 76–739. Submitted on briefs May 31, 1979.—
Decided June 29, 1979.*
(Also reported in 280 N.W.2d 684.)

For the appellants the cause was submitted on the joint briefs of *Dennis J. Mank* and *Schroeder, Gedlen, Riester & Moerke;* and *Frank W. Bastian* and *Lichtsinn, Dede & Haensel,* all of Milwaukee.

For the respondent the cause was submitted on the brief of *James P. Brennan, Bernard T. McCartan* and *Brennan & Collins,* attorneys, and *Terese A. Tillman,* of counsel, all of Milwaukee.

COFFEY, J.  The appellants, Lutheran Children's Friend Society and the Easter Seal Society of Milwaukee County, appeal from an order denying a petition for probate of the allegedly revoked will of Marie Haugk and further ordering the intestate administration of the decedent's estate.  The subject will was duly executed on January 6, 1965 naming the appellants, Lutheran Children's Friend Society and Easter Seal Society of Milwaukee County, Inc., as residual beneficiaries.  It is undisputed that the decedent's husband, Horst Haugk, burned the will of 1965 on or about September 2, 1976.

The decedent (hereinafter Marie), and Haugk were married in 1959, her second marriage and his third. At the time of their marriage, Marie was sixty-two years of age and childless, and Haugk was fifty-five years of age, and the record contains no indication that he fathered any children in his previous marriages.

The 1965 will provided that Haugk would receive a nominal disposition from his wife's estate, consisting of her household goods and furnishings, as well as her clothing, jewelry and other personal porperty. Marie's will also provided that Haugk occupy their apartment located in her building, rent free for a period of one year after her death. It was expressly stated in the will that the bequests to her husband did not include any money, securities, evidences of debt, titles or accounts owned by Marie at the time of her death.

The will also provided:

"FOURTH: All the rest, residue and remainder of my estate, of whatsoever kind and wheresoever situated, I direct shall be divided into fifteen (15) equal parts, and I give as follows:

| | | |
|---|---|---|
| "(a) | To JOHN FUCHS, . . . brother, . . . | 1 part |
| "(b) | To RAY SPORS, . . . nephew, . . . | 3 parts |
| "(c) | To PAUL SPORS, . . . nephew, . . . | 4 parts |
| "(d) | To JOHN FUCHS, JR., . . . nephew . . . | 2 parts |
| "(e) | To DAVID KJELL, . . . friend, . . . | 2 parts |
| "(f) | To SALVATION ARMY, . . . | 1 part |
| "(g) | To LUTHERAN CHILDREN'S FRIEND SOCIETY, . . . | 1 part |
| "(h) | To EASTER SEAL SOCIETY OF MILWAUKEE COUNTY, INC., . . . | 1 part |

"FIFTH:    In the event HORST HAUGK or DAVID KJELL shall predecease me, his legacy shall lapse and become a part of the residue of my estate.

"In the event JOHN FUCHS, RAY SPORS, PAUL SPORS, or JOHN FUCHS, JR. shall predecease me, leaving issue of his own surviving me, then such issue shall take, and if more than one, equally between them as tenants in common, the share which the parent would have taken had he been then living, but if any of said legatees dies before my decease without issue surviving him, the intended bequest shall lapse and become a part of my residuary estate."

The 1965 will was drafted by Atty. Albert Franz who retained a copy of the testamentary document. The original of this will was deposited for safekeeping in the offices of the Milwaukee County Register in Probate on January 7, 1965.

In March, 1976, Marie and Haugk consulted another attorney, Terese Tillman, regarding the drafting of new individual wills. Thereafter, Attorney Tillman met with the Haugks on August 11 and 26 and discussed their intentions in establishing new wills. At the August 26 conference, Marie and Haugk authorized Atty. Tillman to prepare new wills and post-nuptial agreements disclaiming each party's interest in the other's estate.

The next day, after the conference with the new attorney, Haugk attempted to withdraw the 1965 will from the office of the register in probate, but the request was denied as he had not complied with the requirement that he obtain Marie's signature on a power of attorney form provided by the probate office for the withdrawal of a will. A few days later on the 31st of August, 1976, Haugk returned to the probate office and secured the will after producing his wife's signature on the witnessed and notarized probate office power of attorney form.

At the will contest hearing, Haugk testified that at his wife's request he burned the will in the basement incin-

erator of Marie's apartment building. He also explained that, at the time of the burning of the will in the first week of September, 1976, his wife was not present in the basement as she was suffering from a severe heart condition and thus was unable to climb the thirteen stairs separating the kitchen from the apartment's basement.

A week to ten days after the burning of the will on September 10 and 17, Marie conferred by telephone with Atty. Tillman requesting the delivery and execution of the new will and post-nuptial agreements. In the conversation on the 17th, the attorney told Marie the new will was prepared and scheduled an appointment for its execution on September 20, 1976. The new will, similar in many respects to the provisions contained in the 1965 will, provided for a nominal bequest to Haugk. He was to receive Marie's personal effects and the rent-free use of the apartment for eight months rather than one year. Another change in the new will provided the estate residue was to be divided equally among her nephews, Ray and Paul Spors and John Fuchs, Jr. Further, in contrast to the earlier 1965 will, the new will withdrew any bequest to the appellant charities, the Easter Seal Society of Milwaukee County, Inc., and Lutheran Children's Friend Society. Haugk explained at the will contest hearing the reason for the withdrawal of the bequest to the appellant charities was because his wife, Marie, had become disenchanted with the charities because of their frequent advertising and solicitation for contributions.

The new will was never executed as Marie died of a heart attack sometime during the day of September 17, 1976, after the phone conversation with Atty. Tillman. Some six days thereafter, on September 23, 1976, Haugk petitioned the court for the probate of his wife's estate. The petition reflects that his wife died intestate leaving property valued at approximately $130,000. Haugk was listed as the estate's sole beneficiary and at his request the court appointed him personal representative.

The Easter Seal Society petitioned the court on January 26, 1977, for admission to probate of a conformed copy of the destroyed will. The charity received this copy of the 1965 will from the drafter of the earlier will, Atty. Albert Franz. Haugk has objected to the charities' petition for probate of the destroyed will.

The Easter Seal Society, in petitioning the court for admission of the 1965 will, stated that: (1) the revocation was ineffective for failure to comply with sec. 853.-11(1)(b), Stats., requiring a third party's destruction of a will be at the testator's request and in his or her presence; and (2) that even if the revocation was in accordance with the statute, it was ineffective under the dependent relative revocation theory, sec. 853.11(5), as Marie did not intend the revocation to be effective until the new will had been executed.

After the hearing on the admission to probate of the destroyed 1965 will, the trial court made the following findings: (1) that the removal of the will from safe-keeping was proper, (2) that the destruction of the will complied with sec. 853.11(1)(b), Stats., as it was performed at Marie's instruction and in her "constructive presence"; (3) that the destruction of the new will was not dependent upon an effective execution of the 1976 will.

*Issues:*

1. Was the withdrawal of the will from the probate office invalid pursuant to sec. 853.09(3), Stats., thus making the destruction of the decedent's will ineffective?

2. Did the destruction of the decedent's will comply with sec. 853.11(1)(b), Stats., requiring a third party's destruction of a will to be at the testator's direction and in her presence?

3. Was it the decedent's intention that the destruction of her will be effective only upon the valid execution of a new will?

I. *Was the Testator's Will Properly Withdrawn*
*from Safekeeping?*

The appellants contend that the revocation of the 1965 will should be declared invalid as the power of attorney form used by Haugk for withdrawal of his wife's will from the custody of the register in probate was improper as it did not comply with the requirements of sec. 853.09 (3), Stats. The statute provides:

"853.09. **Deposit of will in county court during testator's lifetime.**

". . .

"(3) WITHDRAWAL. A testator may withdraw his will during his lifetime, but *the register in probate shall deliver the will* only to the testator personally or *to a person duly authorized to withdraw it for the testator, by a writing signed by the testator and 2 witnesses other than the person authorized.*" (Emphasis supplied.)

The appellants maintain that contrary to the two witness requirements in sec. 853.09(3), Stats., the power of attorney form produced by Haugk in securing his wife's will from the probate office was witnessed by only one person. Haugk contends he had the right to rely that the register in probate's delivery of the 1965 will was done in compliance with sec. 853.09(3). Alternatively, he argues that the invalidity of the power of attorney form used in withdrawing the will from the probate office is being raised for the first time on appeal and thus the issue is not properly before this court.

The respondent's allegation that the question of noncompliance with sec. 853.09(3), Stats., was not raised in the lower court cannot be supported, as the record reflects that the validity of the power of attorney form was considered by the trial court. A thorough reading of the record indicates that the trial judge discussed the question of compliance with sec. 853.09, and issued a finding in the following language: "The testimony of the

notary public was uncontroverted that the power of attorney authorizing Horst O. Haugk to withdraw the 1965 will from the office of the register in probate was signed by Marie Haugk in the presence only of the notary public, and that there was no influence exerted upon the said Marie Haugk to execute said instrument." Therefore, we conclude that the existence of this finding establishes that the question of the validity of the power of attorney form was addressed by the trial court.

In analyzing this issue, it is undisputed that the power of attorney form produced by Haugk to obtain the 1965 will was signed by the decedent and notarized by Eleanor Nauertz. Further, it is undisputed that she was the only witness as to the proof of Marie's execution of the form. Thus, the signed document bearing the signature of only one witness to the execution to the power of attorney form was in violation of sec. 853.09(3), Stats., that permits the release of the testator's will to a third person only upon compliance with the following condition: that the third person is authorized by a writing signed by the testator and two witnesses, other than the person authorized to receive the will.

Despite this violation of the sec. 853.09(3), Stats., witnessing requirements, we will not declare the revocation of this will invalid on that ground alone. The legislative intent underlying the sec. 853.09(3) witnessing requirements was to prevent the fraudulent procurement and destruction of a testator's will. In this case there is no evidence that the will was obtained from the probate office through fraud. The trial court, in fact, found there was no influence exerted upon Marie to execute the power of attorney form. Further, Eleanor Nauertz, the sole witness to Marie's execution of the form, testified unequivocally that Marie's signing of the document was an act of her own free will.

In the absence of proof establishing that this will was fraudulently obtained from the probate office, we will not declare the revocation of this testamentary document invalid solely on the grounds of non-compliance with the witnessing requirements of sec. 853.09(3), Stats. However, we note that in this case the non-compliance with sec. 853.09(3) could have been avoided by the exercise of greater care by the register in probate's office. In this case an agent of the register in probate's office participated in the non-compliance with sec. 853.09(3) in giving Haugk a power of attorney form with only a single witness signature blank rather than two witness signature blanks as provided in the statute. To compound this problem, the probate office accepted the defective form bearing only one witness's signature rather than two signatures and gave Haugk Marie's 1965 will. Carelessness of this nature will in some instances contribute to a party's fraudulent designs; thus public offices charged with a statutory duty similar to the dictates of sec. 853.09 must exercise greater care in the inspection of legal papers, thereby preventing the improper distribution and receipt of invalid documents. It is indeed fortuitous that Atty. Franz came forward with a copy of the destroyed will, thus preventing the frustration of the decedent's testamentary intentions.

## II.  *Was the Revocation in Compliance with Sec. 853.11(1)(b), Stats.?*

The common law requirements for revocation of a will by a physical act have been codified in sec. 853.11(1)(b), Stats., which recites:

"853.11  **Revocation**  (1)  SUBSEQUENT WRITING OR PHYSICAL ACT.  A will is revoked in whole or in part by:
". . .

"(b) Burning, tearing, canceling or obliterating the will or part, with the intent to revoke, by the testator or by some person in the testator's presence and by his direction."

Thus the revocation statute clearly delineates that, in order for the revocation of Marie's will to be effective, Haugk had to burn the will: (1) in Marie's presence, and (2) at her direction. In the *Estate of Beale,* 15 Wis.2d 546, 559, 113 N.W.2d 380 (1962), it was held that the revocation statute recites the "only ways by which a will can be revoked. . . ." Therefore, the statutory requirements in sec. 853.11(1)(b), Stats., mandating that a will's revocation be in the testator's presence and at his direction will be strictly construed by this court as the intent of the statute is to prevent fraud.

### Was the will destroyed in Marie's presence?

The record discloses that Marie was in the kitchen of her apartment while Haugk was in the basement burning the will in the incinerator. He explained that Marie's heart condition prevented her from going to the basement because of the strain of climbing the stairs. Contrary to the strict wording of sec. 853.11(1)(b), Stats., the trial court found that Marie, being in near proximity in the same house, 13 steps away, was in Haugk's "constructive presence" at the time the will was destroyed.

In *Estate of Murphy,* 217 Wis. 472, 259 N.W. 430 (1935), this court discussed the necessity of the testator's presence during the destruction of a will. In that case the testator's will was destroyed by his sister not in his presence. The testator learned of the will's destruction sometime afterwards and, although he had ample opportunity to execute a new will, the testator apparently acquiesced to the will's destruction. In *Mur-*

*phy* the trial court had found that the testator ratified the will's destruction and therefore strict adherence to the statutory requirement of the testator's presence was not essential. This court, recognizing the testator's non-presence during the will's destruction, reversed the lower court and mandated the following requirements for a valid revocation of a will:

" 'Inasmuch as revocation involves intention, the inference arises that the physical act must be performed by the testator himself or under his sanction and direction. . . . Both presence and direction of the testator being usually essential where the act is performed by another, a will is not legally revoked, though destroyed by the testator's own order, if burned or torn where he did not or could not see or take cognizance of the deed done, as statutes commonly require the revocation by physical act to be by testator himself or in his presence and in such states cancellation by a third party out of the presence of testator is of no effect, but in other states destruction by direction of the testator outside of his presence may be effective. The local statute must determine whether both presence and direction are here indispensable.' " *Id.* at 480. *See:* Schouler, *Wills,* sec. 587 at 667 (6th ed.).

However, the court in *Murphy* did not define the "testator's presence" as used within the contemplation of the revocation statute. The requirement of "presence" has been defined in will execution cases. These cases require that a valid will must be executed and witnessed in the immediate presence of the testator and two witnesses. In the earlier will execution cases, it was found that the testator and the witnesses must be in a position where they could see the execution and attestations. *Will of Meurer,* 44 Wis. 392, 28 A.R. 591 (1878); *Will of Downie,* 42 Wis. 66 (1877). In later cases this court has construed the requirement as combining physical proximity with the witnesses' awareness that the other witness is signing the testamentary document. *In re Hulett's Estate,* 6 Wis.2d 20, 26, 94 N.W.2d 127 (1959).

Again, it is the clear intent of the will execution statute and the construing case law to prevent the fraudulent manipulation of a testator's estate.

In *Estate of Hulett* the court ruled that a valid execution had not taken place as the attesting witnesses, while in the same room, were totally unaware of the testator's and the other witness signing because of the large number of people in the room, preventing the other parties' view. The *Hulett* case, in part, relies on *Estate of Wilm*, 182 Wis. 242, 196 N.W. 255 (1923), which bears some factual similarity to the case at bar. In *Estate of Wilm* the drafting attorney took the will from the presence of the bedridden testator into the kitchen where it was witnessed in the presence of two other people, but out of the hearing and sight of the testator. The testator's bedroom was approximately ten feet from the kitchen, separated by a wall. After considering these facts, the court stated:

"Even if the word 'presence' is construed to mean within a sphere where the senses of the testator can inform him of the performance of the act, the present case would not come within the statute, for he could neither hear ordinary conversation in the kitchen nor see what was being done on the kitchen table from any point in the bedroom he occupied. It is true the distance from the kitchen table through the wall of the bedroom to the bed was perhaps less than ten feet, but the solid wall prevented both the senses of hearing and seeing from ascertaining what was being done." *Id.* at 244.

Thus, in recognition of the case law reviewed above strictly construing the statutory element of "presence" as it relates to testamentary issues, we cannot sustain the trial court's finding that Marie's "constructive presence" satisfies the requirement stated in sec. 853.11(1)(b), Stats. The "testator's presence" as used in sec. 853.11 requires that when another person destroys a will on the behalf of the testator, the testator must be in that par-

ty's immediate physical presence and, furthermore, possessing an awareness that the will is being destroyed. To hold otherwise would open the door to enumerable cases of fraud.

In this case, Marie was not in Haugk's physical presence and could not see the burning of the will. Thus, it is evident that she had no knowledge that the will was presently being destroyed. Further, as can be concluded from the *Estate of Wilm, supra,* the testator's limitations of movement due to physical infirmities appear to lack any controlling significance in the consideration of this issue. In the present case, a valid revocation in compliance with sec. 853.11(1)(b), Stats., could have been achieved if Haugk had torn up and destroyed the will in Marie's presence; thus she would not have had to endanger her health by climbing the basement stairs. It makes even more sense and eliminates all suggestion of fraud if the testator personally revokes the will, defacing each page of the document and placing her initials thereon.

The requirement that a will must be destroyed in the "testator's presence" must be strictly construed. This strict construction is necessary so as to prevent the inadvertent or more importantly the fraudulent destruction of a will contrary to the testator's intentions. Each element recited in the revocation statute must be established by adequate evidence as this court will not adopt a position that will promote either intestacy or the fraudulent destruction of an individual's last will and testament.

We hold the attempted revocation of Marie Haugk's 1965 will was ineffective as the burning of the will was not in her immediate physical presence and thus she had no present knowledge of the will's destruction. Thus, the facts in this case establish a failure to conform with the

revocation requirements of sec. 853.11(1)(b), Stats. The trial court's finding that the will was destroyed in the testator's "constructive presence" is contrary to the great weight and clear preponderance of the evidence.

Thus, we do not consider the second statutory element required for a valid will revocation—whether the will was destroyed at Marie's direction. We also do not reach the appellants' final contention that the doctrine of dependent relative revocation would preclude the valid revocation of the will as Marie did not intend the destruction of the 1965 will to be effective until she had executed her new will.

*By the Court.*—Order reversed and cause remanded for further proceedings not inconsistent with this opinion.